No. 10.—BRYANT BATTON and others, plaintiffs in error, *vs.* JACOB WATSON, defendant in error.

[1.] Where P was charged as being the principal actor in procuring the destruction of a will: *Held*, that the party attempting to set it up, was not obliged to rely upon his testimony, but might prove his declarations as part of the *res gestæ*, so far as the same constitute a part of the principal transaction, illustrate its character, and are cotemporaneous with it.

[2.] Where a testator during his last illness is unduly induced by fear, favor or affection, or any other cause, unduly exercised in such manner as to take away his free voluntary mind and capacity, to destroy his last will and testament, duly executed by him—a copy of the same, upon due proof thereof, will be established.

Application for letters of administration, in Houston Superior Court. Tried before Judge POWERS. October Term, 1852.

The issue in this case arose on an application to the Court of Ordinary of Houston County, by Bryant Batton and Sarah H. Coalson, for letters of administration on the estate of Andrew J. Coalson. The application was resisted by Jacob Watson, on the ground that Coalson shortly before his death, made a will, a copy of which he proposed to prove and set up. alleging that Coalson, a short time before his death, and while he was sick, was forced and compelled by the threats of one Charles F. Patillo, his father-in-law, to destroy the original will.

On the trial, Joseph Tooke, who was left executor in the will, but who had previously renounced the executorship, was introduced as a witness, by the propounder of the will. Tooke swore, that, on the 24th of June, 1852, he was called on by Coalson, to make a will, which he wrote as Coalson dictated it, and which he read three or four times to Coalson. Witness then transcribed the will, adding one more clause, by the direction of Coalson, and which had been added to the draft in Court. The copy exhibited, was made from the original. On the 25th of June, on his return from his mill, the next day,

witness found a note from Capers Patillo, requesting him to come to Coalson's, and bring the will with him, and while at supper a negro came and made the same request. Witness went to Coalson's house, and carried the will, which had been given him by Coalson. He found Dr. Patillo and his wife at Coalson's. Witness gave the will to Coalson at his request, who remarked that "Dr. Patillo had kicked up such a fuss, he would be compelled to destroy his will, and the law would have to be his will." Patillo demanded the right to read the will, which he did, and pronounced it "an unjust will," and spoke in an angry tone, both to Coalson and witness. Coalson destroyed the will.

James K. Shine, a subscribing witness, testified, that Coalson was in his right mind, at the time of the execution of the will—thinks the copy exhibited and the original the same in substance.

Lunsford Pitts, a subscribing witness, testified that Coalson was in his right mind, and knew of no influence used by Dr. Patillo in procuring him to destroy the will.

Alexander Everett, a subscribing witness, swore, that Coalson was of sound mind, and executed the will voluntarily. Witness visited Coalson the next evening and was invited by Mrs. Patillo into the parlor; while there, heard loud and boisterous talk in the sick room, and recognized the voice to be that of Doctor Patillo; but could not distinguish what he said; when he went into to see Coalson, found Dr. Patillo in the room, who in a few minutes, invited witness to walk into the parlor with him.

Counsel for caveators then asked witness to state what took place between him and Dr. Patillo in the parlor, and what was said to him by the latter. To which question counsel for applicants objected. The Court overruled the objection, and counsel for applicants excepted. The witness then stated, that after they had gone into another room, Dr. Patillo remarked, "that he had just understood that Coalson had made a will, cutting off Sarah (his daughter, and the wife of Coalson;) that it was not such a will as he had expected; that he would

Batton *et al. vs.* Watson.

not submit to it; that he would resist it at the threshold, and make Sarah sign away what was given to her, and would take her home and support her as he had done; that she should not have a dime of the property, and that he had said that much to Jack" (his son-in-law.) Dr. Patillo seemed excited.

On his cross-examination, witness stated, that he visited Coalson the next morning, and he seemed to be laboring under the impression that he had done his wife injustice in his will; was glad that Dr. Patillo had said to him what he had about the will; that he had destroyed it, and the law must be his will.

The copy of the will was then read in evidence to the Jury.

After the introduction of other evidence, not material to the decision of this Court, the Court below charged the Jury, "that if they were satisfied that there was such a pressure and restraint upon the deceased by Dr. Patillo or any one else, so as to prevent the action of the deceased's free will, at the time of the destruction of the will, and that undue influence continued up to his death, (if from the evidence, you think that the will up to that time was legally and duly made and executed,) you should set it up as the last will and testament of deceased; and it makes no difference, whether this undue influence originated or was founded in fear, favor or affection, or any other cause; but you must be satisfied that it was such a restraint and pressure as, under the circumstances, took away the free and voluntary mind and will of deceased, and so continued up to his death."

To which charge counsel for applicants excepted, and upon these several exceptions have assigned error.

WARREN & FRANKS and KILLEN, for plaintiffs in error.

S. T. BAILEY & R. P. HALL, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first assignment of error in this record which we

VOL. XIII 9

are called on to review is, the admission of the evidence of Alexander Everett to the Jury, as to the conversation he had with Doctor Patillo the evening the will was destroyed.

The Court admitted the evidence, on the ground that it was part of the *res gestæ*, and in our judgment, properly admitted it. This species of evidence is not admissible, as a general rule, unless it grows out of the principal transaction, illustrates its character, and is contemporaneous with it. *Carter and Wife vs. Buchanan*, 3 *Kelly*, 517. 1 *Greenleaf's Ev.* §108. The principal transaction here is, the destruction of Coalson's will by the undue influence and interference of Doctor Patillo. The will was executed on the 25th of June, and on the next day, after the will had been sent for, but before it is brought to Coalson, the witness hears loud and boisterous talking in the sick room; recognizes the voice to be that of Patillo, but cannot understand what is said. Shortly afterwards witness went into the sick room, and Doctor Patillo invited him into the parlor, when he stated, "he just had learned that Coalson had made a will, cutting off Sarah; that it was not such a will as he had expected; that he, Patillo, would not submit to it; that he would resist it at the threshold; that he would make Sarah sign away what was given to her, and would take her home, and support her as he had done; that she should not have a dime of the property, and that he had said that much to Jack. Dr. Patillo seemed excited." This conversation was intermediate the time the will had been sent for to Tooke and its return to Coalson the same evening. When Tooke brought the will to Coalson, it was destroyed by him. This evidence tends to illustrate what took place in the sick room when the witness heard the loud and boisterous talking, and was made during the time the will was sent for and its return; therefore, a part of the transaction which finally resulted in the destruction of the will. These declarations also went to show the motive by which the party charged with having exerted the undue means to procure the destruction of the will, was influenced. It was urged on the argument, that Patillo was a competent witness to prove the same facts, to

Batton *et al.* *vs.* Watson.

which Everett testified. The reply is, that Dr. Patillo is the principal party charged with having procured the destruction of this will, and those who are attempting to set it up, are not obliged to rely upon the testimony of the principal actor in the supposed fraud. *Bridges vs. Eggleston,* 14 *Mass. Rep.* 249. *Davis vs. Spoone,* 3 *Pickering's Rep.* 287. *Allen vs. Duncan,* 11 *Pickering,* 310.

There was no error in admitting the copy will to be read in evidence, on the testimony of Tooke and Shine, as to its being a substantial copy of the one destroyed.

[2.] We find no error in the charge of the Court to the Jury. The charge assumes the law to be, that if the testator was unduly induced by fear, favor or affection, or any other cause unduly exercised, to destroy his will, and such undue influences operated as a pressure and restraint upon the deceased, under the circumstances in which he was placed at the time, so as to take away his free and voluntary mind and will, and so continued up to his death, then the will ought to be set up. The plaintiffs in error certainly have no just ground of complaint against this charge: for the Court, in our judgment, put the case to the Jury in a pretty strong point of view for them. Although the Jury set up the will by their verdict, yet, we think it is extremely doubtful whether the deceased did not intend, after all, to die intestate; but it was the exclusive province of the Jury to pass upon the evidence submitted to them, and having done so, we have no legal power to interfere with their verdict, under the circumstances disclosed by the record in this case.

Let the judgment of the Court below be affirmed.