## PHIPPS *vs.* MANSFIELD *et al.*

[This case was argued at the last term, and the decision reserved.]

1. Where the refusal to grant a non-suit does not hurt the defendant, for the reason that the plaintiff introduces more evidence, and perfects his case, it is not good ground for a new trial.
2. If one party be dead whose testimony is in court by interrogatories,

the parties on the other side are competent witnesses, and a new trial will not be granted because they contradict the dead party or relate his conversations, especially when the fact so contradicted or related is abundantly proven by other testimony.

3. A deed delivered up to be canceled provided certain contingencies happen, and which by inadvertence was not canceled, may be used to sustain title to land, where the contingencies upon which it was to be canceled never occurred, especially where the case is on trial in a court of equity.

4. Generally, newly discovered testimony will not operate to procure a new trial where the counsel of the movant knew of its existence and accessibility.

5. Influence which citizens of a county who are parties to the suit possess, is no reason for change of venue, and the other citizens have no such interest in a case between the sureties on a county treasurer's bond, and the mother of such treasurer, in respect to title to land, as to disqualify them as jurors.

6 If such county treasurer has the legal title to land and conveys the same to his sureties to indemnify them against loss sustained by reason of such securityship, equity will not interfere against the sureties at the instance of the holder of a secret equity, of which the sureties had no notice, actual or constructive.

7. The verdict is supported by evidence and in accordance with the law of the case.

Ejectment. Title. Equity. Deeds. Witness. Nonsuit. Principal and surety. Contracts. New trial. Before Judge HILLYER. Clayton Superior Court. March Term, 1878.

Mansfield *et al.* brought ejectment (in the short or statutory form) against Phipps *et al.* Mrs. Phipps filed her bill to enjoin the ejectment suit and to enforce a specific performance of an agreement on the part of defendants to cancel the deed on which their suit was founded. The two cases were tried together.

Plaintiffs in ejectment placed in evidence a deed from Phipps, the son of complainant in the bill, to them, dated in 1871, for the stated consideration of $1,500.00, conveying the land in question; they then proved that Phipps had lived about three and a half miles from Jonesboro since the

war, except some time when he lived in Jonesboro; that he lived on the land with his mother until his death, which occurred since the beginning of the suit.

Plaintiffs closed.    Defendants moved for a non-suit, which was refused.    Plaintiffs then proceeded; their evidence was, in brief, as follows:

Phipps, the son, was treasurer of Clayton county; plaintiffs were the securities on his bond; he became a defaulter; one of the securities went to see him in regard to it; he proposed to deed them this land in order to save them from loss, at least *pro tanto;* they agreed, and he made them this deed; he was in possession of the land; had been since the close of the war (1865); his mother lived there also.    Plaintiffs knew nothing of any claim to the land by Mrs. Phipps.    A proposition was made to settle the default with the ordinary and grand jury, by turning over the land to the ordinary for the county; Phipps made a deed accordingly, and the security who had conducted the negotiations delivered their deed to be canceled provided the securities were fully released; they were not released, nor the deed actually canceled.    The securities have had to pay a considerable sum on account of the default of their principal.

The evidence of defendants was, in brief, as follows: Phipps, the husband of complainant, went to the army as a substitute for one Hanes, in 1863; he received about $500.00 cash, a horse and saddle, and a note for $2,000.00; the note he left with the complainant for her benefit, and to buy her a home (as she testified).    He died soon after returning from the army.    She gave the note to her son for the purpose of collecting money on it for her; he did so, and bought the land now in dispute with the proceeds; they both lived on it; she never attended to business matters of that kind, and trusted the whole transaction to her son; she did not know he had taken title in his own name; nor that he had conveyed it; or indeed that he ever laid claim to it.    The securities agreed that if Phipps would make a deed to the ordinary for the county, they would deliver up their deed to be

canceled; he made the deed, his object being to stop all prosecution for embezzlement, the securities delivered their deed, and defendants in ejectment supposed it had been canceled until it was produced in court. The note of Hanes was made payable to Phipps, the son; when he bought the land he took the title in his own name.

The jury found for plaintiffs in ejectment

Mrs. Phipps moved for a new trial, on the following, among other grounds:

1. Because the court erred in refusing to grant a nonsuit on motion of defendants.

2. Because the court allowed plaintiffs in ejectment to testfy as to sayings of Phipps in relation to the locality of the land, he being an original party to the ejectment cause, and being dead. [His evidence had been taken by interrogatories, and was in court.]

3. Because the court charged, in effect, that if the securities delivered up their deed for cancellation, the parties believing at the time that the liability on account of which the deed was made had been done away with, but the deed was not canceled, through inadvertence or accident, without fraud, and it turned out afterwards that the securities were not relieved, so that the consideration of the cancellation failed, they could reassert their title, and Mrs. Phipps would not be entitled in equity to compel a specific performance of the agreement to cancel.

4. Because of newly discovered evidence that the default of the principal had been fully settled, so far as the county was concerned, by a rule absolute against the sheriff for the amount of the default, and the securities thereby discharged. [Movant alleged that she did not know this at the time of the trial, that her original counsel was dead, and by reason of her age and infirmity she had been unable to prosecute diligent inquiry concerning these facts.]

5. Because the jury trying the case was not impartial, the subject matter of the suit being a default arising from the misappropriation of the taxes paid in the treasury

by the citizens of the county, so that no such citizen could be an impartial juror; and because plaintiffs in ejectment were men of large influence in the county.

6. Because the verdict was contrary to law, evidence, and the charge of the court.

The motion was overruled, and movant excepted.

N. J. HAMMOND; SPENCE & DORSEY, for plaintiff in error, cited as follows: Court should have granted non-suit, 12 *Ga.*, 166; Adams on Ejectment, 247; 2 Gr. on Ev., 304. Witnesses incompetent, 37 *Ga.*, 118; 39 *Ib.*, 186; 42 *Ib.*, 120. Illegal consideration, Code §§2690, 2743, 3054; 39 *Ga.*, 85, 90; 48 *Ib.* 358; 59 *Ib.*, 165; 30 *Ib.*, 944; 29 *Ib.*, 207; 28 *Ib.*, 111; 27 *Ib.*, 481; 9 *Ib.*, 440; 57 *Ib.*, 109; 56 *Ib.*, 365, 503, 527, 596; 49 *Ib.*, 37; 6 *Ib.*, 591; 19 *Ib.*, 133; 41 *Ib.*, 361.

SPEER & STEWART; W. H. HULSEY, for defendants, cited as follows: Non-suit properly refused, Code, §3346. Witnesses competent, 52 *Ga.*, 385. Consideration to cancel failed, 14 *Ga.*, 145. New evidence, 49 *Ga.*, 210; 55 *Ib.*, 227; 33 *Ib.*, 24, 173. Verdict right, 49 *Ga.*, 133; 6 Watts, 131; 43 *Ga.*, 281, 374–379, 400, 483; 42 *Ib.*, 148. Consideration good, Code, §2164.

JACKSON, Justice.

Mansfield and Morrow brought ejectment against Mrs. Phipps and her son for the recovery of a tract of land. Mrs. Phipps filed a bill setting up certain equities therein, and it was agreed that the ejectment and equity causes be tried together. The jury found for the plaintiffs in ejectment, who were the defendants in equity, in both cases, and a motion for a new trial having been refused, Mrs. Phipps brings the case to this court for review.

1. We do not think that the plaintiff in error was hurt by the refusal to non-suit the plaintiffs; for if their case

was not fully made out, they went on immediately and perfected the proof.

2. So with regard to the testimony of the plaintiffs in ejectment after one of the defendants was dead; as to the locality of the land. It did not hurt the defendant; the proof was abundant besides their evidence; and the real party, Mrs. Phipps, was living, and the party who died *pendente lite* was sworn by interrogatories before his death.

3. In respect to the charge of the court we see no error. It was to the effect that if the deed on which the plaintiffs in ejectment relied, was delivered up to be canceled provided another deed was given which should relieve them as sureties for Phipps, the county treasurer, and they were not so relieved as sureties, and the deed to them had not in fact been actually canceled, that they still could recover upon it. There seems to have been evidence to support the charge. Morrow and Mansfield were sureties on Phipps' bond as county treasurer, he was a defaulter, he had title to this land, and he gave them a deed to it for the purpose of securing them against his default. Subsequently the ordinary agreed to take a deed to the land and thus to release the sureties, but that failed; and hence these sureties insisted that they had the right to consider their deed, which had not, in fact, been canceled, as good and valid. It appears equitable, and the case was on trial in equity.

4. The ground in regard to newly discovered testimony is not supported by the affidavits of counsel, and does not therefore come up to the rule of diligence.

5. We do not see how the citizens of the county were interested in the cause so as to disqualify them as jurors, and there is nothing in that ground for new trial.

6. The other grounds certified to by the judge go to the point that the verdict is against the law, equity, evidence, and charge of the court.

The case is about this: The husband of the complainant in equity furnished the money which bought the land sued for, as she alleges, for her, but her son took title to

himself. So she and her son swear. But the facts appear that the note was made payable to the son—that the father had this done, or was present when it was done; that the son bought the land with the proceeds of this note; that the deed was made to himself; that he gave a title to it to these sureties to secure them; that afterwards it was supposed that if a deed was made to the ordinary and theirs was canceled they, the sureties, would be relieved; that a deed was so made and their deed delivered up for such conditional cancelation; that it was not in fact canceled; that they were not relieved, but had paid for Phipps large amounts, and that more was due. On these facts substantially the jury found their verdict. We think that it is not against the charge of the court, or the law, or equity, or the evidence. The deed is free from the taint of being given to suppress the prosecution for felony, because it was evidently given to save harmless these sureties who had no power to suppress such a prosecution, neither of them being officers of the court, so far as the record discloses. The truth is that they stand as innocent purchasers, without notice of a secret equity; and in this view, even conceding that Mrs. Phipps is right in her facts, they will be protected against her secret equity. The legal title was in her son; they bought from her son and took his deed without notice, or pretence of notice, that her money paid for the land. They had been forced to pay money for the son on their bond as his sureties; and the judgment against him and them was still open for a large balance, and the consideration for the land was the fact of securityship, and that they would have to pay as sureties. Hence their equity is as high as anybody's can be, and a court of equity will not interpose against them, especially when Mrs. Phipps' trust in her son, and her misplaced confidence in him, have brought her into all this trouble, and more especially when her whole equity is secret, resting entirely in parol without a scratch of a pen to strengthen it; and without pretence even that Morrow and Mansfield knew or had heard anything about her interest.

The legal title was in them; upon it they sought to recover; she carried them into equity; they stand on the footing of innocent purchasers without notice; her only equity is a secret trust unknown to them; and equity will not relieve her. Code, §2329; 7 *Ga.*, 530; 13 *Ga.*, 66; 42 *Ga.*, 95, *et seq.*

Judgment affirmed.

[This case was argued at the last term, and the decision reserved.]

