## PORCH *v.* FARMER.

1. The general rule is that where one files a caveat to a paper offered for probate as a will, the burden of proof is on the caveator to sustain the grounds of his caveat.
2. "Where a paper found among a decedent's papers is offered for probate as a will, and appears to have been canceled or obliterated in a material part, a presumption arises that the cancellations or obliterations were made by the deceased, and that he intended them to operate as a revocation." Accordingly, where it is shown that the paper offered as a will for probate, which had been mutilated in material parts, had been in the custody of the deceased up to the time of her death, the propounder was met with the presumption just stated.
3. "Joint operation of act and intention is necessary to revoke a will."

4. Applying the foregoing rules to the facts of this case, the propounder did not overcome by evidence the presumption against him; and consequently the verdict of the jury in favor of the propounder was without evidence to support it.

5. In view of the foregoing ruling, holding that the presumption that the alleged testator had mutilated the will herself had not been overcome by the evidence, it was error to submit that issue to the jury.

No. 3853. APRIL 18, 1924.

Appeal from probate of will. Before Judge Roop. Coweta superior court. June 4, 1923.

T. G. Farmer Jr. filed a petition in the court of ordinary, to probate an alleged will. The case was appealed by consent to the superior court. It was alleged, that in February, 1920, Mrs. Celia R. Seay, of Coweta County, died after having made and published her last will and testament, in which she named petitioner as executor; that certain named persons were heirs at law of the deceased, including her brother, J. R. Porch; that all the heirs at law were sui juris; that "said will, which is produced in court, has been defaced, and some words in said will have been cut out; that said will was not demolished or defaced by petitioner or by the deceased, but that same was done by some other person not known to petitioner or the deceased; . . that it was not the intention of the deceased to revoke will; and that deceased died thinking that said will was in the same condition that it was at the time said will was executed by her. Petitioner produces said will in court, and prays that it may be proven in solemn form," etc. By amendment petitioner prayed that the will be admitted to record as it was originally executed, and that the words cut out of the will be placed therein as they were originally. A copy of the alleged will was attached to the petition. J. R. Porch, as heir at law of Mrs. Seay, filed his caveat upon the following grounds: (1) That the paper offered is not a will, and is not the will of Mrs. Seay, that the pretended will is not signed by Mrs. Seay, nor is the paper witnessed by any one. (2) That the paper offered as the will of Mrs. Seay has not been established as her will, and is therefore not entitled to probate as such. (3) Caveator denies each and every allegation of the petition. (4) Caveator denies that Mrs. Celia R. Seay was a resident of Coweta County at the time of her death, and avers that the court of ordinary of Coweta County has no jurisdiction to probate the will. By amendment the caveator averred, in answer to plaintiff's amend-

ment attaching a copy, that, if the same was ever the will of Celia R. Seay, it was revoked by being mutilated in material parts; that it was cut and torn, and her own name and names of witnesses were cut therefrom; that the original will, being thus revoked by the deceased, was never revived, and it should not be probated. On the trial the jury returned a verdict in favor of the propounder, and the court entered the following judgment: "The jury in the above-stated case having found in favor of the propounder, the verdict of the jury is hereby made the judgment of the court; and the said will of Mrs. Celia R. Seay, attached to the petition and offered by the propounder as the last will and testament of the said Mrs. Celia R. Seay, is hereby set up and established as the last will and testament of Mrs. Celia R. Seay, and the words cut out of said will are hereby placed therein as they were originally in said will, and said copy of said will attached to the amended petition is a true copy of said will of the said Mrs. Celia R. Seay before same was obliterated, and said will is hereby set up and established as it was originally executed by the said Mrs. Celia R. Seay, and said will is hereby proven in solemn form, and the ordinary of said county is hereby directed to pass an order admitting said will to record as satisfactorily proven in solemn form," etc. The caveator filed a motion for new trial upon the general grounds, and upon three grounds complaining of the charge of the court in certain respects. This motion was overruled, and the caveator excepted.

*W. L. Stallings* and *W. R. Jones,* for plaintiff in error.

*T. G. Farmer,* contra.

HILL, J. (After stating the foregoing facts.) The controlling question under the evidence in the case is whether the paper offered by the executor as propounder of the purported will of Mrs. Celia R. Seay was so mutilated by her before her death as to amount to a revocation of the will, or whether it was done by some one else, and whether the will as originally executed should be set up and established as the will of the testatrix. The general rule is that the burden of proof is upon the person attacking a paper offered for probate as a will to sustain the grounds of his caveat. But our Civil Code provides (§ 3919), that "An express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke; such intention will be presumed from the obliter-

ation or canceling of a material portion of the will; but if the part canceled be immaterial, such as the seal, no such presumption arises." In all cases of revocation the intention to revoke is necessary to make it effectual. Civil Code (1910), § 3920. It thus appears that where a will has been canceled or obliterated in a material part, a presumption of revocation arises, and the burden is on the propounder to show that no revocation was intended. In *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606), it was ruled as follows: "Where a paper found among a decedent's papers is offered for probate as a will, and appears to have been canceled or obliterated in a material part, a presumption arises that the cancellations or obliterations were made by the deceased, and that he intended them to operate as a revocation." Also: "Joint operation of act and intention is necessary to revoke a will."

In a note to Graham *v.* Burch, 28 Am. St. R. 339, 349 (47 Minn. 171, 49 N. W. 697), it is said that "It has been held that if a will, though found in a tin box belonging to the testator, has its seal torn off and his name and the names of the attesting witnesses obliterated, a presumption of its revocation arises, which cannot be overcome by proving a conversation between the executor and the testator shortly before the death of the latter, with respect to fulfilling a bequest made in the will. In re White, 25 N. J. Eq. 501." In the same case in discussing the question of presumptions arising from mutilation, the same author says: "The tearing, obliterating, or mutilating of a will, or some portion thereof, may, of course, be done after as well as before the testator's death, and by another person as well as by him; and the danger always exists that it may have been done by some other person, if any one besides the testator had access to the will and an opportunity to obliterate or mutilate it. But after the death of the testator there is rarely any evidence accessible to show when or how the will came to be in the condition in which it was found, and the law must therefore indulge the presumption that such evidence of mutilation or obliteration as it bears resulted from the testator's act done with revocatory intent, or it must deny all effect of such evidence, except when it is aided and supplemented by other means of proof. In this dilemma, the courts have adopted the rule that when a will was in the custody of the decedent, and is found after his death,

bearing upon it evidence of such acts of mutilation or of obliteration as are requisite and sufficient to revoke it, its condition will be presumed to have been the work of the testator, done with intent to effect its revocation.   This presumption must prevail unless overcome by satisfactory and competent evidence.   In Goods of Dallow, 31 L. J. P. & D. 128; Elms *v.* Elms, 1 Swab. & T. 155; 4 Jur. N. S. 765; 27 L. J. P. & D. 96; Wolf *v.* Bollinger, 62 Ill. 368; Succession of Muh, 35 La. Ann. 394, 48 Am. R. 242."

The question therefore arises, has the presumption raised by reason of the fact that the will was found in the possession of testatrix at the time of her death, mutilated in material parts, been overcome by the evidence produced by the propounder that the mutilations were caused by others than the testatrix herself? The propounder, in order to overcome this presumption, offered the evidence of the three witnesses to the will, showing that the testatrix executed the will after it had been read to her, in which she had devised the bulk of her estate to her afflicted nephew, Willie Brittain; that the testatrix stated to all of these witnesses that she wanted her nephew to have her property; that the will was freely and voluntarily made, etc.   The propounder, T. G. Farmer Jr., who is a lawyer and the nominated executor of the alleged will, testified that Mrs. Seay sent for him to write her will, which he did, and after it was properly executed she gave him the will to put in a box with other papers belonging to her, and requested him to keep the papers in his office.   Later Mrs. Seay requested that he send her the box containing her papers, including the will; and he did so, the will not being mutilated at that time.   He also testified that he kept a copy of the will as written by him, and this was offered in evidence on the trial of the case.   The alleged will in its mutilated condition was offered in evidence, the mutilated portions thereof being as follows:

"I, [                    ] of said State and County, being of sound and disposing mind and memory, do make, declare and publish this my last will and testament.   .   .

"Item 3rd. I give, bequeath and devise to my nephew, Willie C. Brittain, absolutely and in fee simple all of the interest that I have in and to lot of land [            ] the seventh district of Meriwether County, containing [                ] es, the same be-

ing an undivided one half interest in s            land, the other half interest being owned by Ear and Adam Porch. If said tract of land should be divided before my death, I give, bequeath and devise the 101-1/4 acres of said tract that I receive, to my nephew Willie C. Brittain. . .

"Item 5th. I hereby constitute and app testamentary guard           and here authority to manage an       of the p       ch I have given to the said    ittain, in item 3rd of this my last will, giving her full authority to rent and collect the rents and the proceeds of same; and I expressly confer upon her the power as such guardian to control said property, excusing her from giving bond or making any returns to the ordinary.

"Item 6th. I hereby constitute and appoint T.       sole executor of this my last will and testament, and      essly confer upon him power as such to administer my estate, excusing him from giving any bond or making any returns to the ordinary; and I expressly confer upon him the full authority and power to sell any part of my estate hereinbefore especially devised and all of the property herein especially devised, at public or private sale, with or without notice as he may deem best, and without any order of the court, making good and sufficient conveyance to the purchaser and holding the proceeds in said sale to the same uses and trust as hereinbefore declared inthe several items of this my This May 21st, 1915.          C      eay.

"Signed, and sealed, declared and published by Celia R. Seay, as her last will and testament in the presence of us, the undersigned, who subscribed our names hereto in the presence of said testator after she had signed her name thereto, and at her instance and request and in the presence of each other. This      15.

Mr.             L. S.

J.             L. S.

The evidence for the propounder also showed that the testator lived in the home of the mother of the principal legatee in the will, Willie Brittain, and that she was very fond of her nephew, and stated to numerous witnesses on different occasions that she had given all of her property to this nephew. After the death of the testatrix the mutilated paper which had been executed by the testatrix was found in the trunk of testatrix, which was kept locked and to which she alone kept the key, and which was in the room occupied only by her. Carrie Williams, a housemaid working for the mother of Willie Brittain, testified that "When I found it [the will] this cloth was wrapped around it [indicating]. I will show you exactly how I found it [indicating], and this is the way the string was tied around it; had a string wrapped around the middle of it. The paper was in the package when Mrs. Brittain took it out of the trunk when she was cleaning out her auntie's room. It had a cloth string around it. I picked it up this way [indicating], and when I looked at it I says, 'Mrs. Brittain, here is a will.'" This witness further testified: "I helped wait on Mrs. Seay during her last sickness. I talked with Mrs. Seay every day. She was not unconscious that morning when I left there before she died that night. She was conscious to the last. I had a talk with her every day until two or three days before she died. I talked with her every day. She had something to say about the will. I was talking to her one day, I was straitening the coverlet on her bed. I says, 'I wish I had one of these,' she says 'Caroline,' she called me Caroline, 'when I go down home again I will bring you one. I have three. I give Willie all I had, but I am going to bring you one of these coverlets when I go back there again.' I says, 'All right.' She says, 'I am going to bring you one.' She told me up until about a week before she was going to bring me one. She was out of bed then. I think she was out of her bed about three days before her death. This conversation took place just before she took her bed, just before she got down sick. I never heard her say anything about it after she was in bed. After she got sick, in her last days, I never heard her say anything."

Mrs. A. F. Strozier, an aunt of Willie Brittain, testified: "Mrs. Seay was exceedingly fond of Willie. She seemed to be a good bit more fond of Willie than she did of any other member of the family; she was a good bit more attached to him than any of the

rest of them. She never expressed herself as having changed her feelings towards Willie. These are the only two conversations that I had with her about it, except right after the will was made. I came down to see her, I cannot tell you when it was, and she said she had made her will and had left everything to Willie. She always seemed to be fond of Mrs. Brittain. She told me that she did not know what she would do if it was not for my sister and her husband. She never expressed herself as having changed her mind in regard to Mrs. Brittain and Willie up to the time she died. That conversation that I had was on Sunday before she was stricken on Friday. I did not know anything about the will having been drawn until . she told me." The caveator (a brother of Mrs. Seay), his wife, son, and daughter, who lived in the house with him, in a different county from where Mrs. Seay resided most of her time, and where the latter visited for several months during nearly every year, testified that they did not know that Mrs. Seay had made a will, and that none of them had ever seen or mutilated such will, if one was made.

It is contended by the propounder that the above and similar evidence offered by the propounder on the trial authorized a finding by the jury that the presumption which arises on account of the mutilated paper, offered for probate in this case, having been found in the custody of the deceased up to the time of her death, had been rebutted. But we are of the opinion that this contention cannot be sustained by the evidence. There is nothing in the evidence to show that any one other than Mrs. Seay had access to or made the mutilations and obliterations in the will; and although it may have been done by others, and it may work a hardship, we must take the case as we find it, and holding, as we do, that the presumption of law is, under the facts, that Mrs. Seay had revoked the will by mutilations of material parts thereof, and this presumption not being rebutted by proof, we feel constrained to hold that the jury was not authorized to find a verdict in favor of the propounder, under the evidence. *Hartz* v. *Sobel,* 136 *Ga.* 565 (71 S. E. 995, 38 L. R. A. (N. S.) 797, Ann. Cas. 1912D, 165).

*Judgment reversed. All the Justices concur.*