## SINGLETON *v.* SHEWMAKE *et al.*

No. 11870. OCTOBER 16, 1937.

*Robert E. Brown, E. W. Jordan,* and *J. Paxson Amis,* for plaintiff.

*Harris & McMaster* and *Evans & Evans,* for defendants.

JENKINS, Justice. The will offered for probate was typewritten, and contained certain alterations made with a pen, as follows: To item 1, designating the manner of burial, was added the words, "and beside my husband's grave." Two diagonal cross lines forming a large "X" covering the whole paragraph were drawn across item 3, which devised all of the equity in a farm, on which the devisee held a security deed, described in the item. On the left margin of the paper opposite this item were the words written in ink: "Substitute Pay any amt. due her accdg. to

papers held and give her $1000 as a token of love & affection." In item 6, giving to a niece two houses and lots of land and certain described articles of personalty, an ink line was drawn through the words, "and my gold pin which is set with diamond chips and two small rubies." On the left margin of the paper opposite this item were the words written in ink: "Subs. my house next to Frank Arnau and $2500 in cash or papers." Five ink lines were drawn diagonally across all of item 7, devising to a sister a described farm in fee simple. On the left margin opposite this item were the words written in ink: "During life only." Four ink lines were drawn diagonally across item 8, bequeathing to a nephew certain described notes and security deeds. Between the first and second lines of the item were written in ink: "Cash or notes $1000." The following appeared in pencil on the manuscript cover used on the back of the instrument: "In case of my death this is to be disregarded in re property & my Ft. Valley home to go to Wesleyan College—memorial to my mother, & other property to be equally divided between Effie Jane Crosby & Ross Jr. Bayless & Mrs. Voyles Gayly, the same being in trust & income only, used for heirs until they are of age 21 and 18 resp., except the third for Mrs. Gayly. She may occupy the house on W. Church St. if she so desires for a home & will keep up taxes & repairs or some similar arrangement by which she receives no more than her one third of income, the rent being figured at $30 per mo. C. E. Mayo, Trustee, w. bond. 3-14-27. E. S. Singleton." (The name of the testatrix as signed on the will was Effie Shewmake Singleton.) Following the quoted portion of the pencil memorandum on the cover appeared an inventory of properties, described in part, in the total amount of $17,325. The will was dated June 26, 1916. Witnesses testified that all of the typewriting in the instrument remained the same as when it was originally executed; and proper execution and attestation was proved. The witnesses, however, testified that the lines drawn across or through the items described, the words in ink on the margin of the paper, and the pencil memorandum on the cover of the will, were in the handwriting of the testatrix, but that none of these changes were on the instrument at the time of its execution. There was testimony that the instrument was found among the papers in the custody of the decedent at the time of ·

her death. All of this evidence was undisputed. There was no evidence as to any declaration by the testatrix indicating any intention to revoke only those items of the will which were obliterated.

1. "An express revocation by written instrument shall be executed with the same formality and attested by the same number of witnesses as are requisite for the execution of a will." Code, § 113-403. "An express revocation may be effected by any destruction or obliteration of the original will or a duplicate, done by the testator or by his direction with an intention to revoke; such intention will be presumed from the obliteration or canceling of a material portion of the will; but if the part canceled is immaterial, such as the seal, no such presumption shall arise." § 113-404. Accordingly, where an instrument found among a decedent's papers was offered for probate as her will, which appeared to have been canceled or obliterated by drawing marks diagonally across certain material items thereof, the obliteration of which affected the testamentary scheme, a presumption arose that such cancellations or obliterations were made by the deceased, and that she intended them to operate as a total revocation of the will. *Porch* v. *Farmer*, 158 *Ga.* 55 (122 S. E. 557); *McIntyre* v. *McIntyre*, 120 *Ga.* 67 (2, 8), 70, 72 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606). While statements made in the handwriting of the deceased on the margin of the paper opposite the items thus obliterated or canceled, and designating a contrary disposition of the property covered by such items, but unattested, as well as a general unattested statement written on the cover of the will declaring that the will was to be ineffective, and indicating a different testamentary scheme, would not, under the provisions of the Code section first quoted, operate as an express revocation in writing of the will, such declarations made in the handwriting of the testatrix would tend to support the presumption of law that the material obliterations or cancellations were made by the testatrix for the purpose of revoking the will. *Patterson* v. *Hickey*, 32 *Ga.* 156; *McIntyre* v. *McIntyre*, supra. There being no dispute as to the cancellation of material parts of the will and as to these written declarations by the testatrix, and no evidence to indicate that she intended to revoke only the canceled items, the statutory presumption as to a revocation of the entire

will was not rebutted. These facts clearly distinguish the case from that of *Hartz* v. *Sobel,* 136 *Ga.* 565, 569 (71 S. E. 995, 38 L. R. A. (N. S.) 797, Ann. Cas. 1912D, 165), where it was said that "the evidence strongly indicated that the testatrix did not intend to cancel or revoke her entire will, but only in the particulars mentioned, and that she preserved it and regarded it as her will in force after she had cut the words from it," and where in the absence of any actual intention to revoke the entire will, it was held that the attempted pro tanto cancellation and revocation was inoperative, and that the will as originally executed should be admitted to probate if the obliterated words could be restored by evidence. Accordingly, the court did not err in refusing to admit in evidence the will offered for probate, and in directing the verdict for the caveators.

*Judgment affirmed. All the Justices concur.*