Pretermitting any decision upon the question as to whether or not, under the Code, § 113-611, in propounding for probate an alleged copy of a will claimed to have been lost or destroyed *Page 416 
after the death of the testator, it is necessary not only to produce but to prove its execution by all three of the alleged subscribing witnesses who may be in life and available, or whether the same rule would apply as to the probate in solemn form of an existing will (see, in this connection as relating to a lost will, Kitchens v. Kitchens, 39 Ga. 168, 99 Am. D. 453; Mosely v. Carr, 70 Ga. 333; Scott v. Maddox, 113 Ga. 795, 39 S.E. 500, 84 Am. St. R. 263; and, as relating to an existing will, Crutchfield v. McCallie, 188 Ga. 833 (2), 5 S.E.2d 33; Brock v. Brock, 140 Ga. 590
(2), 79 S.E. 473; Bowen v. Neal, 136 Ga. 859, 861, 72 S.E. 340; Gillis v. Gillis, 96 Ga. 1 (2), 23 S.E. 107, 30 L.R.A. 143, 51 Am. St. R. 121; Hall v. Hall, 18 Ga. 40 (2)), in the instant case the record contains the evidence by which the propounders sought to show that the alleged lost will continued in existence up to the time of the testator's death, and thus to rebut the strong presumption of its revocation in the event the will ever in fact existed. On this question, even were it to be assumed that the evidence submitted, together with that offered, to show the execution and contents of the will, was conclusive in the propounders' favor on these questions — even then, and under such an assumption, the evidence introduced and the evidence offered was wholly insufficient to negative the strong presumption of law that the will had been revoked. A verdict was demanded in favor of the caveators on that question, and therefore the court did not err in directing a verdict in their favor and against the propounders. See, in this connection, Lyons v. Bloodworth, 199 Ga. 44 (1 a) (33 S.E.2d 314); Wood v. Achey, 147 Ga. 571 (3, 4) (94 S.E. 1021); Harris v. Camp, 138 Ga. 752 (3) (76 S.E. 40); Scott v. Maddox, 113 Ga. 795 (2) (39 S.E. 500, 84 Am. St. R. 263); Moseley
v. Evans, 72 Ga. 203 (3).
Judgment affirmed. All the Justicesconcur.
 No. 15139. MAY 12, 1945. REHEARING DENIED JUNE 7, 1945.
J. L. Looney and S.E. Looney as propounders filed in the court of ordinary of Floyd County a petition to establish a copy of an alleged will of their grandfather, T. M. Looney, and to probate the same in solemn form. A purported copy of the will was attached to the petition which showed that the will was dated in 1923 and was witnessed by W. S. Rowell, C. Stanton, and James Maddox. It bequeathed all the testator's property to his son, John M. Looney, for life with remainder to the above two propounders, sons of said John M. Looney. A caveat was filed to said petition by Mrs. J. J. Davis, W. L. Looney, and Mrs. Emmett Bridges, who alleged that they were legatees of John M. Looney, the sole heir of T. M. Looney. Upon the trial in the superior court, to which the case was appealed by consent, J. L. Looney, one of the plaintiffs, testified that T. M. Looney, his grandfather, died March 24, *Page 417 
1924, and that prior to his death he had made a will in writing. James Maddox, one of the purported subscribing witnesses to the will, testified that he was an attorney practicing in Rome, Georgia, in 1923; that he knew T. M. Looney but, as to whether T. M. Looney came to his office in 1923 to get his will drawn, he had no recollection whatever, his recollection being entirely negative and his mind blank, but he did not testify that Looney did not do so; that he had no recollection of having drawn such a will nor of Looney signing it in his presence; that Looney was in his office about that time, being a client, and that he did draw some papers for Looney, who was mentally capable of drawing and executing a will. On cross-examination, he testified that the language of the will as attached to the petition was not such as he would ordinarily use, and that he never drew a will in which he did not provide for the payment of debts. Rowell Stanton, another one of the purported subscribing witnesses to the will testified that he was a practicing attorney in Rome in 1923; that he would not say he knew T. M. Looney, and he had no recollection of witnessing a will of Looney in 1923, his testimony being entirely negative, and he having no memory of it whatever; that he would not say he did not witness it, and possibly he could have done so; that W. S. Rowell, the third alleged subscribing witness to the will, was dead. W. E. Bridges testified that he married a granddaughter of the testator, Looney; that the day before the testator died the witness was in Looney's room, and Looney told the witness that "he had some papers at the bank and he wanted me to go and get them for him, at the First National. I think he gave me a written order, told me to see Mr. Harris, the cashier of the bank. I attended to that errand for him. I got some papers for him at the bank. I do not know whether his will was in these papers, it was in a brown envelope and it was sealed up." He testified further that he carried the envelope to Looney's home the next day, saw that Looney was dying, and left before he died; that he gave the sealed envelope to J. M. Looney, the son of the deceased, a week or two later, who put it in his pocket, and the witness never saw it again; that he did not remember whether there was any handwriting on the envelope; and that he did not know what was in the envelope, whether deeds or other records. It was stipulated that after search the will of T. M. Looney could not be found. The propounders then proffered *Page 418 
their own testimony, going to show the proper execution of the will and its contents, which, on objection, was excluded. One of the propounders then proffered his own testimony that in his presence the testator, upon executing the will, carried it to the First National Bank and put it in a safety-deposit box (which was in the year 1923). This testimony, on objection, was excluded. The propounders then offered the testimony of still another witness as to a declaration of the deceased in a conversation with the witness in 1923, that the deceased had drawn a will leaving his property to his two grandsons, the propounders, with a life estate to John Looney, and had left the will in a safety-deposit box at the First National Bank. This testimony was, on objection, excluded. One of the propounders then proffered his own testimony that W. E. Bridges, whose testimony has already been recounted, brought the will under discussion to the home of T. M. Looney, the testator, on the day of and after his death, and carried the will off with him when he found Looney was dead. This testimony was likewise excluded on objection. He did not offer to show how he knew, or professed to know, that the will was in the sealed envelope which Bridges had testified he brought there in March, 1924, nor that what he referred to asa will was the same will originally deposited; nor was there any testimony to show that the testator never had an opportunity to destroy or otherwise revoke the will; nor was any testimony offered to show the contents of the envelope. After hearing the evidence, the trial judge directed a verdict against the propounders. A motion for new trial was filed, in which the only error assigned related to the exclusion of testimony of the propounders and of another witness, purporting to show the proper execution of the will, its contents as alleged, and its continued existence up to the time of the death of the testator, as hereinabove shown. Exceptions is taken to the order overruling the motion for new trial.