## S98A0588. MURCHISON v. SMITH et al.
### (508 SE2d 641)

HINES, Justice.

This is an appeal from the judgment entered on a jury verdict in a will contest regarding the estate of Ms. Annie Bell Smith. For the reasons which follow, we affirm.

The elderly Ms. Smith was diagnosed with terminal lung cancer in December 1994. On January 31, 1995, she executed a will leaving the bulk of her estate to her brother-in-law, Caesar Smith and his wife Lois Smith, who were assisting Ms. Smith and providing her with care. The will also named Caesar Smith as sole executor. At the same time, Ms. Smith executed a general durable power of attorney empowering Caesar Smith to act as her attorney-in-fact.

Ms. Smith executed another will on March 10, 1995, while she was hospitalized. Ms. Smith's cousin, Dorothy Davis-Murchison, a college professor, had been coming to town to visit Ms. Smith since learning of her terminal illness, and Murchison was at the hospital at the time of the execution of the March will. This will made some specific bequests to friends and family members, including an invalid brother,[1] but left the bulk of the estate to Murchison. It provided a specific bequest to Murchison as well as naming her the residuary beneficiary. In the event that Murchison failed to survive the testatrix, the property was to go to Murchison's daughter. Murchison's name was also handwritten into a space provided for the recipient of any remaining balances on all bank accounts; the name "Lois Smith" had been written in the space but was lined through and initialed "A.B.S." There was also a handwritten provision, again apparently

---

[1] Ms. Smith stated to a relative that she had made no provision for her invalid brother in the January will because he was in a nursing facility, it was doubtful he would be able to hold property, and the "state" would care for him.

initialed by the testatrix, appointing Murchison as executor. The will bore Murchison's own initials on a change in a bequest to Ms. Smith's brother. The will made no mention of Caesar Smith or any provision for him or for his wife Lois; Ms. Smith later commented to Lois that Murchison had "rewritten her will" and that Lois was not mentioned.

Ms. Smith was released from the hospital, and on March 20, 1995, Murchison accompanied her to the probate court, where Ms. Smith's January will was on file. Ms. Smith was on oxygen and appeared to be clad in a nightgown or robe. Murchison did most of the talking. Ms. Smith's January will was withdrawn and a will dated March 10, 1995, was filed. Ms. Smith also executed a revocation of the power of attorney to Caesar Smith. The probate judge, who in his capacity as private counsel had drafted the January will, told Ms. Smith that he wanted to make a copy of the January will before she withdrew it. Murchison cautioned Ms. Smith to write "cancelled" or "revoked" on the January will. Ms. Smith wrote "revoked" across the January will, or it was written by the judge or Murchison at Smith's direction, and the judge made a copy of it. Murchison took photographs of Ms. Smith's actions in the probate court. The probate court records reflect that Murchison withdrew the March will on April 13, 1995.[2]

Ms. Smith died April 16, 1995. The original January will was not found after her death; Murchison maintained that Ms. Smith had torn it up. Caesar Smith petitioned to probate the copy of the January will. Murchison petitioned to probate the March will in common form and later filed a caveat to the probate of the January will. The probate court issued an order declaring that the January will was revoked by the testatrix and denied probate; the court also declared it had no authority to determine the validity of the March will offered for probate in common form. A de novo appeal to the superior court followed. After a two-day trial, a jury determined that the January will was not revoked, and the superior court entered judgment accordingly.

Murchison argues that she should have been granted a directed verdict because the evidence was uncontradicted that the testatrix revoked the January will, both by the execution of the subsequent March will and by destruction of the January will with the intent to revoke. But the evidence bearing on revocation was far from uncontradicted.

The issues before the jury were whether the testatrix had the intent to revoke the January will, and whether any revocation of the

---

[2] The records also reflect that Murchison withdrew the document again on April 18 and April 27, 1995.

January will and the connected execution of the March will were the result of duress or undue influence. The jury had to determine whether the evidence showed that Ms. Smith had effected an express revocation of her January will. See former OCGA §§ 53-2-72; 53-2-74. It also had to consider the application of former OCGA § 53-3-6, which provides that

> if a will is lost during the testator's lifetime, destroyed without the consent of the testator during the testator's lifetime, or lost or destroyed subsequent to the death of the testator, a copy of the will, clearly proved to be such by the subscribing witnesses and other evidence, may be admitted to probate in lieu of the original. In such cases, the presumption is that the will was revoked by the testator, but the presumption may be rebutted by clear and convincing proof.[3]

*Smith v. Srinivasa*, 269 Ga. 736 (506 SE2d 111) (1998). Whether the presumption of revocation is overcome by clear and convincing proof is "determined by the trier of fact, and in reviewing the verdict, 'the evidence must be accepted which is most favorable to the party in whose favor the verdict was rendered.' [Cit.] The presumption of revocation may be rebutted by circumstantial as well as direct evidence, including declarations of the testatrix. [Cit.]" *McBride v. Jones*, 268 Ga. 869, 870 (2) (494 SE2d 319) (1998).

The issue of revocation is dependent upon evidence of the testatrix's mental capacity in March 1995, the time of alleged revocation and of execution of the second will. The questions of mental capacity at the time of the March will and the intent to revoke the January will are inextricably bound by the doctrine of dependent relative revocation. That is, "[i]f it is clear that the cancellation and the making of the new will were parts of one scheme, and the revocation of the old will was so related to the making of the new as to be dependent upon it, then if the new will be not made, or if made is invalid, the old will, though canceled, should be given effect, if its contents can be ascertained in any legal way." *Havird v. Schlachter,* 266 Ga. 718 (470 SE2d 657) (1996), citing *Carter v. First United Methodist Church of Albany*, 246 Ga. 352 (271 SE2d 493) (1980). Evidence of the testatrix's diminished mental capacity is likewise relevant to the issues of duress and Murchison's exercise of undue influence because the

---

[3] OCGA § 53-4-46 in the revised probate code, effective January 1, 1998, provides:

"A presumption of intent to revoke arises if a testator's will cannot be found to probate; which presumption may be overcome by a preponderance of the evidence and provided further a copy of said will may be probated if the evidence shows that a lost will was not intended to be revoked."

amount of influence which may dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. *Skelton v. Skelton*, 251 Ga. 631, 634 (5) (308 SE2d 838) (1983).

It is not essential to establish testamentary incapacity by someone who was present when the will was signed or who saw the testator the day the will was executed. A party can demonstrate that the testator lacked testamentary capacity at the time of a will's execution by showing the testator's state of mind within a reasonable period of time both before and after the events in question. *Kievman v. Kievman*, 260 Ga. 853 (400 SE2d 317) (1991). See also *Horton v. Horton*, 268 Ga. 846 (492 SE2d 872) (1997); *Fleming v. Constantine*, 265 Ga. 525 (457 SE2d 714) (1995). What is more, a court must allow the issue of testamentary capacity to go to the jury when there is a genuine conflict in the evidence regarding the testator's state of mind. *Mallis v. Miltiades*, 241 Ga. 404 (245 SE2d 655) (1978).

Caesar Smith introduced testimony that Ms. Smith's health and mental state had been deteriorating since her cancer treatments began in late January or early February 1995. Witnesses described her as depressed, very irritable, fearful, "not too clear," and that sometimes she "just rambled," and her mind had begun to waver. A physician inquired if she was "senile" because of her responses. In March 1995, Ms. Smith was said to be crying constantly, unclear in thought, "speaking out in different tones of voices," hallucinating at times, and susceptible to any suggestion. A witness testified that on March 19, 1995, the day before Murchison accompanied Ms. Smith to the probate court to withdraw the January will and file the later one, Ms. Smith's state of mind was "in and out, going and coming." There was also testimony that Murchison had Ms. Smith sign or initial a document on April 13, 1995, three days before Ms. Smith died, while Smith was hospitalized, on constant pain medication, and "about dead" and "out of it."

This testimony covering a reasonable period before and after the time of execution of the March will and immediately prior to the alleged revocation of the January will created a genuine conflict in the evidence regarding the state of Ms. Smith's mind at the time she executed the March will and caused "revoked" to be scrawled across the January will. Thus, inferences could be drawn by the jury establishing a lack of the requisite mental capacity, and consequently, the lack of intent to revoke the January will. *Dunn v. Sneed*, 260 Ga. 763, 764 (400 SE2d 10) (1991); *Havird v. Schlachter,* supra. Moreover, the jury was authorized to find that the statutory presumption of revocation was rebutted by clear and convincing evidence. *McBride v. Jones*, 268 Ga. at 870 (2). Accordingly, the trial court correctly refused to direct a verdict in favor of Murchison.

Because there was sufficient evidence to support a finding of Ms.

Smith's lack of testamentary capacity, and therefore, lack of intent to revoke the January will, there is no need to address the sufficiency of the evidence with regard to the allegations of duress and Murchison's undue influence. See *Horton v. Horton,* 268 Ga. at 847 (2).

The judgment entered on the jury's verdict stands.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In 1995, before her death in April, Ms. Annie Bell Smith executed a will in January and yet another in March. Appellee, who is Ms. Smith's brother-in-law, presented a copy of the January will for probate. Appellant, who is Ms. Smith's cousin, filed a caveat asserting that the testatrix had revoked that will. A jury found that Ms. Smith did not revoke the will, and the trial court entered judgment on that verdict in Appellee's favor. On appeal, Appellant enumerates as error the denial of her motion for a directed verdict. Thus, the dispositive issue is not the validity of the as yet unprobated March will, but the sufficiency of the evidence to support the jury's finding that Ms. Smith did not revoke her January will. In my opinion, the evidence demanded a finding that Ms. Smith did revoke that will and, therefore, the trial court erred in failing to grant a directed verdict in favor of Appellant. Accordingly, I dissent to the majority's affirmance of an erroneous judgment entered on the jury's unauthorized verdict for Appellee.

Under applicable Georgia law, Ms. Smith could effectuate an express revocation of her January will by her subsequent actions. Former OCGA § 53-2-72 (b). Such subsequent action could take the form of any destruction or obliteration of the original of the January will or a duplicate thereof, accomplished by Ms. Smith or her agent with the requisite intent to revoke. Former OCGA § 53-2-74. It is undisputed that Ms. Smith retrieved the original of her January will from the files of the probate court and that, in the presence of the probate judge, she wrote or caused to be written "Revoked" across the face of a copy thereof which thereafter remained on file in the probate court. See *Singleton v. Shewmake,* 184 Ga. 785, 787 (1) (193 SE 232) (1937). Compare *Howard v. Hunter,* 115 Ga. 357 (41 SE 638) (1902). Moreover, it also is undisputed that Appellee was unable to produce the original of the January will after Ms. Smith's death because she destroyed that document after retrieving it from the probate court. Accordingly, not only was there uncontradicted evidence of an express revocation affixed to the face of a copy of the January will, the undisputed evidence of Ms. Smith's destruction of the original of that will also gave rise to a strong presumption of a valid express revocation, which presumption Appellee could rebut only by

producing clear and convincing evidence to the contrary. Former OCGA § 53-3-6 (b); *Scott v. Maddox*, 113 Ga. 795, 798 (2) (39 SE 500) (1901). Compare OCGA § 53-4-46 (b) (establishing a "preponderance of the evidence" standard for rebuttal of the presumption of revocation). "Clear and convincing evidence" "is an intermediate standard of proof, requiring a higher minimum level of proof than the preponderance of the evidence standard, but less than that required for proof beyond a reasonable doubt. [Cits.]" *Clarke v. Cotton*, 263 Ga. 861, 862, fn. 1 (440 SE2d 165) (1994).

Because Ms. Smith was in the final stages of lung cancer, there naturally was some evidence that her physical and mental health deteriorated between January of 1995 and her eventual death in April of that year. However, in order to rebut the strong presumption of a valid express revocation of the January will, it was necessary for Appellee to make a clear and convincing showing that, after Ms. Smith executed that document, she lost her "testamentary capacity to annul the same, and that such mental incapacity continued up to the time of [her] death." *Saliba v. Saliba*, 201 Ga. 577, 580 (40 SE2d 511) (1946). A review of the record shows that the evidence is wholly insufficient to make a clear and convincing showing that, at no time during the relevant three-month period, did Ms. Smith have the mental capacity to make a valid determination to revoke her January will. Compare *Mallis v. Miltiades*, 241 Ga. 404 (245 SE2d 655) (1978) (addressing the unrelated issue of testamentary capacity on the single date of execution of a contested will).

There also was some evidence that, between Ms. Smith's execution of the January will and her death, Appellant had the opportunity to influence her. Again, however, the burden was on Appellee to make a clear and convincing showing that Appellant exercised "undue" influence to obtain Ms. Smith's presumptively valid express revocation of her January will. See *Batton v. Watson*, 13 Ga. 63 (2) (1853). Appellant is one of several beneficiaries under the provisions of the unprobated March will and, therefore, she has an interest in the revocation of the January will. However, the March will evidences a more equitable and reasonable testamentary disposition of the estate than did the January will, which left the bulk of the estate to Appellee and disinherited Ms. Smith's invalid brother for whom she was the care-giver. See *Quarterman v. Quarterman*, 268 Ga. 807, 808 (2) (493 SE2d 146) (1997). Thus, the evidence shows, at most, a mere opportunity for Appellant to have had an influence upon Ms. Smith. The transcript does not reveal the requisite clear and convincing proof that Ms. Smith expressly revoked her January will as the result of Appellant's undue influence. See *Quarterman v. Quarterman*, supra (summary judgment). Compare *Batton v. Watson*, supra.

The record shows that there is undisputed evidence of Ms.

Smith's intent to effect an express revocation of her January will by placing "Revoked" on the face of a copy thereof and by destroying the original itself, coupled with an insufficiently rebutted strong presumption that the revocation of the will was valid. Whether the presumption of revocation created by former OCGA § 53-2-74 was rebutted by clear and convincing evidence is generally, but not invariably, deemed to be a jury question. *Looney v. Looney*, 199 Ga. 415 (34 SE2d 520) (1945). I submit that this is one of those rare cases, like *Looney*, in which a directed verdict in favor of Appellant was mandated by Appellee's failure to meet his evidentiary burden. Therefore, I must respectfully dissent to the majority's affirmance of the judgment entered on the jury's verdict for Appellee.

I am authorized to state that Presiding Justice Fletcher and Justice Hunstein join in this dissent.

DECIDED OCTOBER 26, 1998 —
RECONSIDERATION DENIED NOVEMBER 20, 1998.

*Dubberly & McGovern, B. Daniel Dubberly III,* for appellant.
Caesar J. Smith, *pro se.*