# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1908.

---

### LIVINGSTON et al. v. TAYLOR, administrator, et al.

1. In the summary of the plaintiff's contentions as made in the petition, the court should not omit any substantial issue of the plaintiff's case which finds support in the evidence; but a failure in this regard will not result in a new trial, where it appears that the court, in the charge as a whole, so presented the law in its application to the omitted issues as to warrant a reasonable inference that the jury understood the plaintiff's full contentions.

2. In civil cases it is erroneous to charge the jury that they are the judges of the law and the facts of the case.

3. The charge that the pleadings of the parties have no probative value was but a cautionary instruction not to confound pleadings with proof, and, considered in connection with its context and the general aspect of the case as revealed by the evidence, was not open to the criticism that it deprived the plaintiff of the effect of the admission, by the defendant's answer, of certain facts alleged in the petition.

4. The deeds allowed in evidence were the defendant's muniments of title, and relevant evidence.

5. In an equity case, where a special verdict is demanded by the parties, and questions covering the issues of fact are submitted to the jury for answer, the judge may in his discretion limit his instructions to such matters as are involved in the questions submitted, and omit general instructions covering the law of the whole case.

6. (a) A party who, after invoking a special verdict, allows a general verdict to be received and published in open court, in the presence of his counsel, without objection, or motion to have the jury retired with a direction to find a special verdict, will be deemed to have waived his right to a special verdict.

(b) Under the recitals in the bill of exceptions the verdict returned was a general one, and the jury failed to answer the questions submitted by the court.

1        1

7. "The law confers upon trial judges a discretion in granting or refus-
ing new trials in cases where the verdict is alleged to be contrary to
evidence and without evidence to support it, and ·imposes upon them the
duty of exercising this discretion." Where the court, in his judgment
denying a new trial, uses language indicating that he has not exercised
his discretion, a new trial will be awarded where he molded his charge
more with respect to special issues of fact submitted to the jury than
to the general law applicable to all phases of the case, and the jury
returned a general verdict, instead of special findings of fact as di-
rected by the court, and when certain minor errors appear in the charge.

Argued July 24, 1908.—Decided February 9, 1909.

Equitable petition. Before Judge Martin. Dodge superior
court. September 14, 1907.

Mary Livingston and the other heirs of Alfred Mullis filed their
equitable petition against J. D. Taylor as administrator of Lovett
Brown, and certain others alleged to be grantees of Brown of cer-
tain portions of lot of land number 216 in the 16th district of
Dodge county, to recover this lot of land from the defendants,
and to have the deeds of the defendants thereto delivered up and
canceled. The petition contained substantially the following aver-
ments: Alfred Mullis died on September 25, 1875, leaving as a
part of his estate lot of land number 216 in the 16th land district
of Dodge county. He left a will under which Brown was one
of the executors, in which capacity Brown duly qualified. Lot 216
was bequeathed to his wife during widowhood, and upon her mar-
riage was to revert to his estate. In 1877 his widow remarried,
and Brown filed a petition to the ordinary for an order of sale,
which was granted, and this lot with other lands was advertised
for sale on May 7, 1878. Brown procured H. J. Sapp to bid for
him at this sale, and the lot was knocked off to Sapp at $25, and
he at once conveyed it to Brown according to his agreement.
Prospective purchasers had asked Brown as to whether the sale
would take place, and he had told them that he did not know
when he would sell it, and, if he sold it at all, it would only be
for the purpose of perfecting titles. Brown waited till the crowd
had dispersed, and then sold the land, which was well worth $2,000,
for $25. John S. Livingston owned land adjacent to the Mullis
tract, and intended to bid at the executor's sale, but was dissuaded
from bidding by the promise of the executor that if he bought the
land as he purposed to do, he would convey to Livingston 20 acres
adjoining the latter's land; and afterwards the executor did con-

vey to Livingston 20 acres pursuant to his promise. Brown had subsequently conveyed various portions of this lot to the other defendants, all of whom had full knowledge of his fraudulent conduct. The prayers of the petition were, for the recovery of the land and mesne profits, and for the cancellation of defendants' deeds. The defendants answered, denying any fraud in the sale by Brown to Sapp, but asserting that it was regular and bona fide, and that the other defendants had purchased bona fide from Brown and without knowledge of his fraud if any. They also set up in detail certain improvements placed on the premises as bona fide purchasers, together with their value; and prayed, if title be found in the plaintiffs, that they be given judgment for the value of their improvements. Upon the trial the case was submitted to the jury upon certain written questions, which they were instructed by the court to answer. The verdict read in open court was: "We the jury find in favor of the defendants. [Signed] J. A. Nixon, Foreman." The plaintiffs filed their motion for a new trial, which being overruled, they excepted.

*Olin J. Wimberly, A. C. Pate,* and *B. R. Calhoun,* for plaintiffs.
*D. M. Roberts & Son* and *W. M. Morrison,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. One ground of the motion for a new trial complains that the court in his charge to the jury failed to state the contentions of the plaintiffs in vital particulars. The instructions of the court in this regard were substantially that the plaintiffs contended that Alfred Mullis died seized and possessed of a certain lot of land; that Lovett Brown as his executor, under an order from the court of ordinary, sold the land in controversy, and at the sale the executor, through an intermediary, purchased the land; that such sale was voidable as to the legatees, if they saw fit, within the time prescribed by law, to attack such conveyance; and that they further contended that this proceeding was brought within that time. He further charged, in that connection, that the specific allegations upon which the plaintiffs relied for a recovery were set forth in the petition, which the jury would take out with them, and which it would be their duty to read carefully in order that they might intelligently pass upon the case under the issues made by the law and the evidence. The plaintiffs in error insist that in their petition they attacked the executor's sale as illegal on three grounds: (1) that the

executor purchased thereat through an intermediary; (2) that the executor suppressed bidding upon the land at the sale by representing to prospective purchasers that it was uncertain whether he would sell the land on the day advertised, and if he did sell, it would be only for the purpose of perfecting the title of the legatees under the will; and (3) that he dissuaded an owner of adjacent land from buying the property, by agreeing that if he would not bid on the land he would convey him, without other consideration, twenty acres of the land which adjoined the land of this prospective purchaser. The plaintiffs further insist that they offered evidence tending to establish all three of their assaults upon the legality of the executor's sale, and that the court's formulation of their contentions limited their attack upon the sale to the allegation that the deed to the executor was voidable because he was a purchaser at his own sale. The court charged in the abstract the law as to constructive and actual fraud; and also to the effect that if the purchaser at the sale did not act in behalf of the executor in the purchase, but bought the land in his own right in good faith, and afterwards sold it to the executor, the executor would have acquired a good title, "provided that he was guilty of no fraudulent conduct which would affect the bona fides on the part of  .  .  [the executor] in suppressing competition or otherwise as charged in the plaintiffs' bill." When the trial court undertakes to summarize the contentions of the parties as expressed in their formal pleadings, he should not omit from the summary any substantial issue. It is bad practice to refer to the jury the duty of wading through pleadings for the purpose of supplementing the statement of the contentions as made by the court. Jurors are generally untrained in the use of technical legal nomenclature and oftentimes might misconstrue or fail to understand the full purport and meaning of a properly pleaded issue. But as the purpose of such a recapitulation of the issues by the court in his charge is to present their substance in concise form, a new trial will not be granted in every case because the jury are instructed that the court does not undertake in his summary to be exhaustive in his statement of the issues, and they are specifically informed that the contentions not referred to in his summary will be found in the pleadings, which they are directed to carefully peruse. A reviewing court will look to the nature of the case, and

the charge as a whole, to ascertain whether the jury has been misled, or whether it is likely that the contentions of the parties have been misunderstood or lost sight of. Applying the rule stated in the first headnote, we do not think the court's presentation of the plaintiffs' case would alone require a new trial, in the absence of other errors.

2. Another ground of the motion complains of the following: "The law the court can deal with, and you receive the law from the court; and when you receive the law from the court, then you are the judges of both the law and the evidence, and this should lead you to the real facts, the truth of the case." The error alleged is that this charge left the jury to decide both the law and the facts of the case, whereas they should have been instructed that they were bound absolutely by the law applicable to the case as given in the charge of the court. It is true that in all cases the jury must take the law as expounded by the court without any concern on their part for the correctness or incorrectness of his exposition. Necessarily, in the application of the law as expounded by the court, the jury must exercise some degree of judgment. But in civil cases it is erroneous to charge the jury that they are the judges of the law and the facts of the case; though the error in this regard may not of itself require a new trial. *Higginbotham* v. *Campbell*, 85 *Ga.* 638 (11 S. E. 1027); *Atlantic etc. R. Co.* v. *Bowen*, 125 *Ga.* 460 (54 S. E. 105).

3. The court charged that the petition of the plaintiffs and the answer of the defendants "do not in this case have any probative value; that is, they are not evidence." It is complained that this charge is so worded as to be understood to mean that the answer could not be used for probative purposes as admissions to the extent of the admissions therein contained. The form of expression, as well as the context in which it appears, shows that this charge was a mere cautionary instruction on the part of the judge that the jury should not confound the pleadings with the proof. The case as made by the petition was that the executor's sale was fraudulent, and the various defendants who afterwards acquired title from the executor had knowledge of the fraud at the time of their purchase. The defendants by their answer vigorously denied all the allegations of fraud, and in this charge the court was merely warning the jury that they should be controlled

in their verdict by the evidence and not by the pleadings. It is true that the answer admitted that Mullis died in possession of the land in controversy, leaving a will which was duly probated by Brown as his executor, and that the land was afterwards sold under an order from the court of ordinary and purchased by Sapp, who afterwards conveyed it to Brown, under whom the other defendants claim title. The scope of the evidence shows that the case was tried in view of those admissions; and we do not think the court could have been understood by the jury as requiring proof of those facts, the truth of which was assumed in the whole conduct of the case.

4. It is complained that the court erred in admitting in evidence the following deeds: (1) from Lovett Brown to Mrs. P. T. C. Boutwell, dated January 9, 1880, consideration $50, conveying 50 acres in the eastern corner of the lot in controversy; (2) from Mrs. P. T. C. Boutwell to Lovett Brown, dated January 19, 1880, conveying the lot in controversy, except 50 acres in the eastern corner of the lot; (3) from Mrs. P. T. C. Boutwell to Asa Harrell, dated January 18, 1881, conveying 40 acres of the eastern corner of the lot in controversy; (4) from Hiram Sapp, administrator of Asa Harrell, to Lovett Brown, of 40 acres in the eastern corner of the lot in controversy. These deeds were objected to as irrelevant to any issue made in the case; and for the reason that if the charges relating to the conduct of Lovett Brown were true, the title derived from him could not have been made valid by any chain made by him to Mrs. Boutwell, and going through her back to Lovett Brown. These deeds were the defendants' muniments of title, their title being derived from Lovett Brown. This title was attacked as fraudulent; and it was competent for the defendants to introduce in evidence all their various muniments of title, so as to give the jury opportunity to determine whether the title of the defendants was tainted with fraud as alleged in the petition, or was bona fide obtained.

5. It is recited in the bill of exceptions that by consent of plaintiffs and defendants the jury were directed by the court to find a special verdict by answering questions propounded to them and submitted under the charge of the court. The first of these questions was as follows: "Was the sale by Lovett Brown, executor of Alfred Mullis, to H. J. Sapp, in May, 1878, made in good

faith and without fraud on the part of the executor?" and the second question was, "Was H. J. Sapp a bona fide purchaser at said sale?" The remaining questions related to the ages of the plaintiffs, to the value of rents and improvements, and to whether the grantees of Brown acquired their title in good faith, and without knowledge of fraud, if any, on the part of the executor. Complaint is made that the court omitted to charge the jury generally upon all the legal propositions involved in the case. Where a special verdict is demanded the trial court may, in his discretion, limit his instructions to such matters as are involved in the questions submitted, and it is not error to omit general instructions covering the law of the whole case. Warden v. Reser, 38 Kan. 86 (16 Pac. 60); Burns v. North Chicago Rolling Mill Co., 60 Wis. 541 (19 N. W. 380).

6. Another ground of the motion complains that the jury wholly omitted and failed to render and find a special verdict and to answer the questions submitted to them for their special findings by answer thereto, as directed by the court and required by law; and because the verdict fails to show upon what plea the same was found, or to deal with or pass upon the questions specially submitted to the jury. In their briefs counsel for plaintiffs and defendants differ as to whether there was any special verdict returned in the case. It appears from the recitals in the bill of exceptions that the jury were, by consent of both parties, directed by the court to find a special verdict by answering questions propounded to them and submitted by the charge of the court. The verdict returned was, "We, the jury, find in favor of the defendant," signed by their foreman and dated. This verdict was received without objection on the part of plaintiffs' counsel, who were present. This verdict was duly read and published in the presence of the jury and the court, and no other verdict of the jury was read and published. The verdict as read was endorsed on the special questions submitted to the jury. After the first special question, "Was the sale by Lovett Brown, executor of Alfred Mullis, to H. J. Sapp, in May, 1878, made in good faith and without fraud on the part of the executor?" were the words, "It was;" and after the second question, "Was H. J. Sapp a bona fide purchaser at said sale?" were the words, "He was." But these answers were not published or read as the verdict of the

jury, and neither the answers nor the questions as a whole are signed by the foreman of the jury, nor does it otherwise appear in the record by whom these words were written, or that the jury ever made the same their verdict. It is not essential that a verdict openly presented and read in open court be signed. *Roberts* v. *State,* 14 *Ga.* 18; *Harris* v. *Barden,* 24 *Ga.* 72; *Patterson* v. *Murphy,* 63 *Ga.* 281. But it is necessary, for an unsigned finding of a jury to become effectual as a verdict, that it be declared as their verdict in open court. 3 Bl. Com. 377. In Johnson *v.* Depuy, 2 N. J. L. 152, the jury wrote down their verdict and delivered the writing to the justice, instead of openly pronouncing it. The court said: "We have no such practice. It would be subject to great abuses. We know of no lawful verdict but that which is pronounced by open voice, in open court." The case therefore stands as though no answers had appeared to these questions, and upon the general verdict in favor of the defendants. If the parties had made no request for a special finding of facts, or the court of his own motion had not submitted specific questions, it would have been perfectly competent for the jury to have returned a general verdict. So the question is, whether, under the circumstances appearing in the record, the failure of the jury to answer the questions propounded, and the return by them of a general verdict instead of answering these questions, vitiates the trial. The Civil Code, § 5330, provides that "If there are several pleas filed by the defendant, a verdict for the defendant must show upon which of the pleas the verdict is rendered." A mere general finding for the defendant where there are several pleas is not a strict compliance with this provision. *Ball* v. *Powers,* 62 *Ga.* 757. Where a general verdict in such a case has been returned for the defendant, if objection is made by plaintiff's counsel that the verdict fails to specify on which plea of the defendants it is based, the jury should be required to retire and return a verdict showing upon which plea it is founded. *Williams* v. *Gunnels,* 66 *Ga.* 521; *Continental Bank* v. *Folsom,* 67 *Ga.* 624. But if a general verdict for the defendant be returned, published, and recorded without objection, it will not be a ground for a new trial that it fails to specify on which plea it rests. *Little* v. *Rogers,* 99 *Ga.* 95 (24 S. E. 856). It is also provided by the Civil Code, § 4849, that "In the trial of any proceedings for equitable relief in this State,

upon the request of either party to said cause, made after the same is called for trial, and before the beginning of the introduction of evidence in the same, the presiding judge shall, when charging the jury, instruct and require them to find a special verdict of the facts only in said cause, and shall inform the jury what issues of fact are made by the pleadings in said cause." The plaintiffs were entitled to have the jury specifically answer the questions submitted to them by the court, and upon their failure so to do it would have been proper for the court to require the jury to retire that they might comply with the statute, or, if they were unable to answer the questions, a mistrial should have been declared. But when the jury returned a general verdict, and it was published in open court in the presence of the plaintiffs' counsel, it was their duty, if they desired to insist upon the return of special findings, to move the court to send the jury back to their room, that they might answer the questions submitted. Counsel should not be permitted, after invoking a special verdict, to allow a general verdict to be published in lieu of the special verdict, without making a protest, or an appropriate motion to have the jury retired with instructions to find a special verdict. No effort was made in the present case to have their omission corrected. The plaintiffs' passive acquiescence in the formal verdict as rendered is equivalent to a waiver of their right to have a special verdict upon the questions submitted. Brown v. Central Pac. R. Co. (Cal.), 12 Pac. 512; Long v. Duncan, 10 Kan. 294; Mack v. Leedle, 78 Iowa, 164 (42 N. W. 636); 20 Enc. Pl. & Pr. 352.

7. In his judgment denying a new trial the court held and adjudged that "the main material question in the case is, was the sale by Lovett Brown as executor of Alfred Mullis to H. J. Sapp in May, 1878, made in good faith and without fraud on the part of the executor? The jury has answered this question in the affirmative, and that H. J. Sapp was a bona fide purchaser in said sale; and there being evidence to support the verdict, the court does not feel authorized to set the verdict aside." The plaintiffs assign as error the court's holding that there was evidence to support such finding; the ruling that the court did not feel himself authorized to set aside a verdict if there was any evidence in support of it; and the finding that the jury had answered two of the questions in the affirmative. As already pointed out, we do not

think, under the recitals in the record, that the jury returned a special verdict as the court assumes in his order refusing a new trial. From the tenor of his order his honor seems to have been of the impression that if there was evidence to support the verdict, he was not authorized to set it aside. This view is erroneous. "The law confers upon trial judges a discretion in granting or refusing new trials in cases where the verdict is alleged to be contrary to evidence and without evidence to support it, and imposes upon them the duty of exercising this discretion." *Rogers* v. *State,* 101 *Ga.* 561 (28 S. E. 978); *Thompson* v. *Warren,* 118 *Ga.* 644 (45 S. E. 912); *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71). If a verdict is palpably against the truth of the case as gleaned from the evidence, the exercise of a sound discretion would not only authorize but require its vacation, notwithstanding there may be some evidence to support it. This court has no discretion to grant a new trial solely because the evidence preponderates against the verdict. *Jones* v. *Gilbert,* 93 *Ga.* 612 (20 S. E. 48). We do not mean to say that the verdict in this case is palpably against the evidence, but only that the judge has not approved it. In view of some minor errors of law, and the fact that the court's charge was molded more with respect to the questions of fact submitted to the jury than to the general law applicable to all phases of the case, and the return by the jury of a general verdict instead of special findings of fact as directed by the court, and the failure of the trial judge to approve the general verdict, we think a new trial should be had.

*Judgment reversed. All the Justices concur.*