LANGAN *et al. v.* CHESHIRE.

No. 17443. SUBMITTED APRIL 10, 1951—DECIDED MAY 15, 1951—REHEARING DENIED JUNE 13, 1951.

*Poole, Pearce & Hall*, for plaintiffs in error.
*Lokey & Bowden* and *Charles M. Lokey*, contra.

WYATT, Justice. 1. It is not contended that the original will of James Ross Cheshire should not be admitted to probate, but the codicil is attacked on several grounds. Counsel for the plaintiff in error treat the bill of exceptions as presenting three questions for decision by this court. It will be so treated here.

The first question presented is raised by the exceptions pendente lite, the general grounds of the motion for new trial, and special grounds 4, 5, 6, 7, 8, 9, 12, and 13 of the motion for new trial, and concerns the establishment, as a part of the last will and testament of James Ross Cheshire, of a certain codicil purporting to be a part of said will.

"In a court of ordinary on an application for the probate of a will in solemn form, the sole question for determination is devisavit vel non. . . On appeal, the jurisdiction of the superior court is limited to the merits of the same issue, and can

deal with no question except such as could have been raised in the court of ordinary." *Foster* v. *Allen,* 201 *Ga.* 348 (40 S. E. 2d, 57). See also *Trustees of the University of Georgia* v. *Denmark,* 141 *Ga.* 390 (81 S. E. 238); *Cone* v. *Johnston,* 202 *Ga.* 420 (43 S. E. 2d, 545). "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator." *Slaughter* v. *Heath,* 127 *Ga.* 747 (9) (57 S. E. 69, 27 L.R.A. (N. S.) 1). See also *Edenfield* v. *Boyd,* 143 *Ga.* 95 (84 S. E. 436); *Brown* v. *Kendrick,* 163 *Ga.* 149 (135 S. E. 721); *Ward.* v. *Morris,* 153 *Ga.* 421 (112 S. E. 719).

In the instant case, the propounders properly proved the original will. As to this there is no dispute. The propounders then introduced the witnesses to the codicil. Two testified in person. The testimony of one, who was in military service, was introduced by stipulation. This testimony, in substance, established the fact that the codicil had been properly executed and attested. The witnesses testified further that Mr. Cheshire was apparently of sound mind when the codicil was executed, and that none of the witnesses saw any of the will except the page on which his signature appears. Therefore, under the rules above stated, the propounders have made a prima facie case entitling the codicil to probate as a part of the last will and testament of J. R. Cheshire, and the burden shifted to the caveators to prove the grounds of their caveat.

The caveators contend that the codicil is not entitled to probate, for the reasons that the codicil does not identify the words "Eliminate" and "J. R. Cheshire"; that the codicil does not in any way indicate the changes to be made; that it is impossible to tell how many eliminations were intended or at what places they were to occur; that there was no evidence to show that James Ross Cheshire wrote the words "Eliminate" and "J. R. Cheshire"; and that, admitting that Mr. Cheshire wrote the words "Eliminate" and "J. R. Cheshire," there was no evidence

to show whether the words were written before or after the codicil was executed. The propounders having made out a prima facie case entitling the codicil to probate as a part of the last will and testament of James Ross Cheshire, if there were any reasons why it should not be so admitted, the burden was upon the caveators to show them. The burden was therefore upon the caveators to show which, if any, of the changes indicated were not intended; which, if any, of the changes were not made by the testator; and which, if any, of the changes, though made by the testator, were not made before the codicil was executed. This they have not done. We therefore must hold that, as against this attack, the codicil was entitled to probate.

2. The second question presented for decision arises under special ground 11 of the motion for new trial, in which it is contended that the codicil was executed under a mistake of fact, and that this mistake of fact accompanied by a weak and depressed state of mind caused the changes to be made in the will which were prejudicial to the caveators. The mistake of fact which is alleged to have occurred is that the testator believed his estate had so shrunk from December, 1947, the date of the will, to December, 1948, the date of the codicil, that the changes were necessary to provide for his wife, when in fact his estate was substantially the same.

In so far as the evidence as to the physical and mental condition of the testator is concerned, it is necessary only to say that nothing was made to appear which could entitle the caveators to the relief they seek.

The caveators' evidence as to the financial condition of the testator was that the value of the stock of J. R. Cheshire Company had decreased in value $74 per share, before obsolescence; that during 1947 the company earned $17,370.50 and in 1948 lost $13,563.64; that in 1948 the company lacked sufficient funds to pay the testator the full salary due him; and that the value of other securities owned by the testator had declined in value about ten percent. There was testimony that J. R. Cheshire had cash assets in 1948 of approximately $12,000 more than he had in 1947; but that this increase represented the collection of a note which had been carried as an asset in 1947, and would not materially affect the condition of the estate of the testator.

This evidence of the caveators is itself sufficient to show that the testator was not mistaken as to the decline in value of his estate, but that as a matter of fact his estate had decreased substantially in value. Therefore, even if a mistake of fact such as is alleged here were a sufficient ground to refuse a will to probate—and we do not intend to intimate that it is—under the caveators' own evidence, there was no mistake of fact in this case.

3. The third question presented for decision is whether or not certain alterations and obliterations show an intent to revoke and have the effect of revoking the codicil here attacked. The Code, § 113-404, provides: "An express revocation may be effected by any destruction or obliteration of the original will or a duplicate done by the testator or by his direction with an intention to revoke; such intention will be presumed from the obliteration or canceling of a material portion of the will; but if the part canceled is immaterial, such as the seal, no such presumption shall arise." "Where a paper found among a decedent's papers is offered for probate as a will, and appears to have been canceled or obliterated in a material part, a presumption arises that the cancellations or obliterations were made by the deceased and that he intended them to operate as a revocation. . . As a general rule, the burden is on a person attacking a paper offered for probate as a will to sustain the grounds of his attack. But by express provision of our statute, where a will has been canceled or obliterated in a material part, a presumption of revocation arises, and the burden is on the propounder to show that no revocation was intended." *McIntyre* v. *McIntyre*, 120 *Ga.* 67 (2), 70 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606).

The will in the instant case is admitted by both sides to have been altered. The alterations appear on the face of the will, and on portions of the will which have previously been incorporated in the codicil. They are, of course, material as regards the codicil, since they concern the very purpose and subject matter of the codicil. The materiality of an alteration is a question of law. Code, § 20-803. There is not one particle of evidence in the record in this case regarding the interlineations and obliterations that appear on the will. They are not mentioned in

the testimony of either side. They were simply ignored at the trial. Therefore the presumptions above referred to not only arise, but stand unrebutted. If the alterations and obliterations were not intended as a revocation of the codicil, the burden was on the propounders to show that fact. They have not attempted to do so. Under these circumstances, we must hold that the judgment of the court below denying a new trial was error. As to the question of revocation of a will by cancellation or obliteration generally, see *Morris* v. *Bullock,* 185 *Ga.* 12 (194 S. E. 201, 115 A.L.R. 700); *Ellis* v. *O'Neal,* 175 *Ga.* 652 (165 S. E. 751); *Hartz* v. *Sobel,* 136 *Ga.* 565 (71 S. E. 995).

*Judgment reversed. All the Justices concur.*