31348. LAVENDER et al. v. WILKINS et al.

HILL, Justice.
Following an adverse decision in the court of probate, the propounders of the will of John R. Cochran appeal from a judgment of the superior court, based upon a jury's verdict, which denied the will to probate. By special

verdict the jury found that the testator entered into a common law marriage with Hilda B. Atkinson after the execution of his will in which he had exercised a power of appointment. The principal issues raised on this appeal involve the questions of who has standing to caveat the probate of a will, and whether a subsequent marriage revokes the exercise of a testamentary power of appointment.

The first wife of the deceased had created a general testamentary power of appointment over assets of a marital deduction trust. This power was to be exercised by her husband by " his last will and testament." Her two nephews, who are two of the caveators and appellees in this case, would take (as residual legatees) the trust assets in default of the exercise of the power of appointment. After the death of his first wife, the deceased duly executed a will on November 17, 1969, appointing to his estate the assets subject to the power of·appointment. In addition to exercising the power of appointment, this will provides for distribution of his estate. A ring, all silver and specified sums of money are bequeathed to four persons. The residual portion of the estate is divided equally among three persons: a friend of the deceased and the two attorneys who drafted the will. The attorneys are named executors of the will and are the appellants in this case.

After the deceased executed this will, and about six months before his death on September 15, 1970, at age sixty-eight, he met Hilda B. Atkinson, who came to live in his home. She is also an appellee in this case.

1. Appellants contend that the court erred in overruling their motion to strike the caveat filed by the first wife's nephews on the ground that they are not within the class of persons that Code Ann. § 113-408 is intended to protect. That section provides that "In all cases, the marriage of the testator, total divorce or birth of a child to him, subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." Appellants argue that because the first wife's nephews are not the heirs, wife or after-born children of the testator, they lack standing to caveat the will. This Code section provides that certain

acts by a testator shall revoke a prior will; the section does not purport to provide who has standing to caveat a will.

The question of who has standing to caveat a will has been determined on a case by case basis, the general statement of the rule being that a will may be contested by any person interested in the estate of the deceased, but cannot be contested by strangers. See *Hooks v. Brown,* 125 Ga. 122, 129 (53 SE 583) (1906); 1 Redfearn, Wills and Administration in Georgia (3d Ed.) § 125. In *Hooks* the court held that a caveator need not be an heir and that the grantee (for value and before probate) of the testator's sole heir at law had an interest in the estate of the deceased such as to enable him to caveat the will.

In *Churchill v. Neal,* 142 Ga. 352 (1) (82 SE 1065) (1914), it was held that a legatee under a prior will could caveat a subsequent will on the ground that the later will was procured by fraud, and thus the purported revocation of the prior will was ineffective. It should be noted that in *Churchill* the legatee's standing to caveat was based upon a will which was not the subject of the probate proceeding.

Conversely, in *Baker v. Henderson,* 208 Ga. 698, 701 (69 SE2d 278) (1952), the court said: "Concededly, if these petitioners will not be injured or benefited by the establishment and probate of the alleged copy will, they are therefore strangers to it, and are not proper parties to this litigation." In *Baker* it was found that the petitioners would not be injured by probate of the will and their petition to intervene was rejected, because they could not benefit by showing that the will was invalid. See also *Doughty v. Futch,* 219 Ga. 677 (2) (135 SE2d 286) (1964).

From these and other decisions we conclude that a person who will be injured by probate of a will, or who will benefit by its not being probated, has an interest in the proceeding so as to provide the necessary standing to caveat. In the case before us the motion to strike the caveat was properly overruled. The nephews, takers-in-default under the testamentary power granted the testator in the first wife's will, had an interest which depended on the validity of the exercise of that power in the testator's will. They could have based their caveat on lack of proper execution of the will, lack of testamentary capacity, etc. Their standing to caveat arose from their

interest in the outcome of the probate, and was not dependent upon the Code section on which their caveat was based.

2. Appellants urge that a will containing an exercise of a power of appointment is not revoked by a subsequent marriage. Appellants have traced the history of Code § 113-408 in an effort to demonstrate the common law origins of that provision, and have cited Annot., 16 ALR 1370 (1922), for the proposition that at common law the will of a woman made in the exercise of a power of appointment was not revoked by her subsequent marriage. The common law apparently had not dealt with the will of a man in these circumstances. The English Wills Act of 1837 provided that "every will made by a man or woman shall be revoked by his or her marriage, except a will made in the exercise of a power of appointment when the real or personal estate thereby appointed would not in default of such appointment pass to his or her heir..." The English Wills Act of 1837 became the model in some states for legislation that prevented revocation by subsequent marriage of wills made by men or women exercising powers of appointment. However, the predecessor to Code § 113-408 was enacted in 1834 prior to passage of the English Act (Cobb's Digest, p. 347).

The ALR annotation cited above states that in those states where no exception as to wills made in exercise of powers of appointment is made in statutes like our § 113-408, "conflicting results have been reached." However, as we read the cases apparently favoring appellant's position, McMahon v. Allen, 4 E. D. Smith (N. Y.) 519 (1855), Osgood v. Bliss, 141 Mass. 474 (55 AR 488, 6 NE 527) (1886) and Wheeler v. Wheeler, 1 R. I. 364 (1850), each held that a will exercising a power of appointment which will was made in contemplation of marriage was not revoked by the subsequent marriage. Hence these decisions created an exception for wills made in contemplation of marriage which exercised powers of appointment. Such cases thus do not support appellant's argument.

If we were to adopt the argument that a will exercising a power of appointment is exempt from Code § 113-408, wills exercising powers made prior to

ceremonial marriages and the birth of children would be excepted from the beneficial effects of Code § 113-408. We decline to create such a broad exception.

Alternatively, appellants urge that a power of appointment exercised by will is not revoked by a subsequent marriage. They argue that, by Code definition, a will is the legal declaration of a person's intention as to the disposition of "his property" after his death, Code § 113-101; that a power of appointment is "authority" but not "property" of the testator, *Keen v. Rodgers,* 203 Ga. 578 (5) (47 SE2d 567) (1948); that the purpose of the remarriage provision of Code § 113-408, supra, was to pass the remarried testator's "property" to his widow; that neither an unexercised power of appointment nor the assets subject thereto would pass to the remarried testator's widow; that although the will of the testator insofar as it disposes of "his property" which would pass to the widow may be revoked pursuant to Code § 113-408, supra, by a subsequent marriage, such marriage does not revoke the exercise of a testamentary power of appointment; and that just as a will may be valid in part and invalid in part, it may be revoked in part and unrevoked in part. In other words, appellants urge that the exercise of the testamentary power of appointment was effective notwithstanding the revocation of the will exercising that power.

Even if the testator's power of appointment was validly exercised by the revoked will, the will would be revoked as to the testator's property and Mrs. Atkinson would be entitled to take from her deceased husband as in case of intestacy. Thus, this argument by appellants is directed only against the nephews, takers-in-default under their aunt's will.

It is that will, the will of the testator's first wife, which defeats appellants' claim. It gave her husband a testamentary power of appointment—to be exercised by "his last will and testament." The testatrix who created the power of appointment had the right to specify how it could be exercised. Thus the courts have held that exercise of a testamentary power of appointment by any instrument other than a will is void. *Newton v. Bullard,* 181 Ga. 448 (1) (182 SE 614) (1935); *Porter v. Thomas, 23*

Ga. 467 (3) (1857).

As we have declined to create an exception to Code § 113-408 which the General Assembly has not seen fit to enact, we will not create an exception for a part of the testator's will which executes a power of appointment. See *Williams v. Lane,* 193 Ga. 306 (18 SE2d 481) (1942); *Simpson v. Dodge,* 220 Ga. 705 (141 SE2d 532) (1965).

A will revoked by subsequent marriage is revoked in toto. A revoked will is not a will. A testamentary power of appointment cannot be exercised by a revoked will. *Newton v. Bullard,* supra.

3. Appellants contend that the court erred in accepting the verdict of the jury and entering judgment thereon, in that the verdict is contrary to the evidence and law.

Of the three elements necessary to a valid common law marriage in Georgia (Code Ann. § 53-101; *Brown v. State,* 208 Ga. 304 (66 SE2d 745) (1951)), there is no dispute in this case as to ability to contract and consummation.

The central issue of fact at trial was the existence of the other element, an actual contract of marriage between the parties. Although the evidence was conflicting, there was evidence from which the jury was authorized to find a contract of marriage. The record contains notepaper on which marriage vows between the two were written, apparently in the testator's hand. The fact that Mrs. Atkinson, using that name, at one time made a written claim against the estate for services rendered did not amount to an estoppel and the jury was not bound by it. The trial judge did not err in accepting the verdict and entering judgment thereon.

4. Appellants contend that the trial court erred in overruling their amended motion for new trial on several grounds.

Appellants urge that the court erred in allowing counsel for Hilda Atkinson and counsel for the nephews to cross examine each other's clients. Code § 38-1705 provides: "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him. If several parties to the same case shall have distinct interests, each may exercise this

right." The second sentence, applicable in cases where there is more than one party on one side, requires only that those parties have "distinct interests," not necessarily opposing interests. See *Gunnells v. Cotton States Mut. Ins. Co.,* 117 Ga. App. 123 (5) (159 SE2d 730) (1968).

The interests of Hilda Atkinson and the nephews were distinct in this *litigation,* although not so distinct in this *trial* looking toward a special verdict as to the existence of a marriage. However, in view of the broad discretion vested in the trial judge in resolving questions of this nature (*Gunnells,* supra) which discretion necessarily must be exercised before the evidence is complete and the issues are fully developed, in view of the possible need of counsel for the nephews to examine Mrs. Atkinson in depth as to her relations with the deceased and her prior inconsistent claim for services, and in view of the absence of any showing of harm to appellants, we do not find such abuse of discretion as would require a new trial.

Appellants urge that the caveators were improperly allowed to give testimony prohibited by Code Ann. § 38-1603 (1), which precludes persons from testifying in their own favor as to transactions or communications with deceased persons in suits instituted or defended by the personal representative of the deceased person. This issue was settled adversely to appellants in *McGee v. Loftin,* 228 Ga. 142 (184 SE2d 578) (1971), which held that in probate proceedings the propounder of a will, although named executor in the will, is not the "personal representative" of the deceased within the meaning of Code § 38-1603 (1). In *Lee v. Boyer,* 217 Ga. 27 (3) (120 SE2d 757) (1961), the court reviewed the cases and noted that in a probate proceeding the propounder and caveator are the opposing parties and both are in life.

Appellants argue that the trial court erred in allowing the caveators to make the opening and the concluding arguments in the case. Normally in a probate proceeding the burden of proof is on the propounder and thus the propounder has the opening and concluding arguments. In *Tilley v. King,* 190 Ga. 421, 427 (9 SE2d 670) (1940), the court held: "It is permissible in a will

contest for the caveator to admit a prima facie case for the propounder of the will, and thereupon to take the opening and conclusion. *Wood v. Davis,* 161 Ga. 690 (131 SE 885) [1925]." The record here contains the following stipulation between the parties: "(1) The proper execution and attestation of the will is admitted. (2) The only issue is whether the will was revoked by subsequent marriage to Hilda Atkinson." Caveators presented their evidence first without objection by the propounders. No issue was made during the trial as to testamentary capacity and the jury was instructed specially to find for or against the existence of a marriage. On the issue being tried, the caveators had the burden of proof and thus the right to make the opening and concluding arguments.

Appellants complain that testimony of one of the nephews concerning his reasons for filing the caveat was hearsay. In order to explain conduct and ascertain motive, evidence that might otherwise be hearsay may be admitted. Code Ann. § 38-302. The trial court instructed the jury that the testimony was admitted for this limited purpose. Appellants had cross examined Mrs. Atkinson as to her motives and we do not find reversible error in the trial court's allowing the nephew to explain his.

Appellants urge that the trial judge erred in giving caveator's request to charge the jury to consider the evidence of the reputation among family, friends and neighbors that the man and woman were husband and wife. Appellants do not dispute that such evidence may be considered by the jury, but instead contend that no evidence of reputation of marriage was presented to the jury. There was sufficient evidence of reputation, for and against the marriage, to justify the charge.

Appellants contend that portions of the charge, for example, that a marriage may be terminated by death, divorce or annulment but not by denial or concealment, intimated to the jury the opinion of the judge that there was a valid marriage. The charge taken as a whole makes it abundantly clear that the jury was to decide the issue of marriage. The charge did not express to the jury an opinion of the trial judge that there existed a valid marriage between the deceased and Hilda Atkinson.

No error requiring the grant of a new trial being

found, the judgment should be affirmed.
*Judgment affirmed. All the Justices concur.*

ARGUED JULY 13, 1976 — DECIDED SEPTEMBER 8, 1976.

*Hudson & Montgomery, James E. Hudson, Rupert A. Brown,* for appellants.
*Fortson, Bentley & Griffin, Edwin Fortson, Davis, Davidson & Hopkins, Jack S. Davidson, James Horace Wood,* for appellees.