## 40039. SKELTON v. SKELTON et al.

GREGORY, Justice.

Following an adverse decision in the probate court, the appellant, propounder of the will of J. U. Skelton, appeals from a judgment of the superior court, based upon a jury's verdict, which denied probate.

1. In his first enumeration, appellant contends the trial court erred in denying the Propounder's motion to dismiss those paragraphs of the caveat alleging undue influence and mistake on the ground that Caveators failed to plead said paragraphs with particularity as required by OCGA § 9-11-9 (b) (Code Ann. § 81A-109).[1] Propounder's oral motion was made at the outset of the trial and after the jury had been empanelled.

At the outset we note that OCGA § 9-11-9 (b) (Code Ann. § 81A-109) is subject to the requirements of OCGA § 9-11-8 (f) (Code Ann. § 81A-108) that pleadings be construed so as to do substantial justice. *McDonough Constr. Co. v. McLendon Electric Co.,* 242 Ga. 510, 512 (250 SE2d 424 (1978). Under the CPA, a pleading should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief. In *Cochran v. McCollum,* 233 Ga. 104 (210 SE2d 13) (1974), we held this principle applicable to all pleadings including special matters (fraud, mistake and conditions precedent) under OCGA § 9-11-9 (Code Ann. § 81A-109). There, the same issue was before the court as in the case sub judice. We held that the trial court erred in dismissing the caveat for failure to state facts relied upon to prove undue influence, fraud or mistake.[2] In *Cochran,*

---

[1] OCGA § 9-11-9 (b) (Code Ann. § 81A-109) provides "In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity . . . ."

[2] We note that under OCGA § 9-11-9 (Code Ann. § 81A-109), there is no requirement that undue influence be pled with particularity.

supra, we said the proper remedy for seeking more particularity is by a motion for more definite statement (OCGA § 9-11-12 (e) (Code Ann. § 81A-112)) at the pleading stage or by the rules of discovery thereafter.[3] We find no error in the trial court's denial of Propounder's motion to dismiss.

2. Appellant's next enumeration contends the trial court erred in allowing the Caveators to admit a prima facie case as to testamentary capacity then allowing Caveators to attack the will on grounds that the testator lacked the testamentary capacity necessary to make a will.

" 'Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator *apparently* had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator. [Cits.]' " (Emphasis supplied.) *Langan v. Cheshire,* 208 Ga. 107, 110 (65 SE2d 415) (1951); *Cornelius v. Crosby,* 243 Ga. 26, 27 (252 SE2d 455) (1979). In the instant case, by admitting a prima facie case, Caveators admitted only the execution with due formality of a paper purporting to be a will by a person *apparently* of sound mind at the time of the execution of the paper. Therefore, Caveators assumed the burden of going forward with evidence to overcome the rebuttable presumption that the testator had the requisite capacity. We find no merit in appellant's contention that by admitting a prima facie case, Caveators somehow stipulated testamentary capacity and were precluded from offering evidence to the contrary.

3. In his third enumeration appellant argues the trial court erred in allowing Caveators to open and close final arguments. Appellant concedes that by admitting a prima facie case the Caveators had the right to open and close final arguments but argues they do not retain this right if they present evidence on testamentary capacity. In support of this contention, appellant directs us to the cases of *McGee v. Loftin,* 228 Ga. 142 (184 SE2d 578) (1971) and *Oxford v. Oxford,* 136 Ga. 589 (71 SE 883) (1911), but we find these cases inapposite to the case sub judice. In neither case did the Caveators admit a prima facie case for the Propounder and assume the burden of proof.

---

[3] Rule 9 [Section 9] itself contains no mechanism for enforcing its terms, and the common practice has been to use Rule 12(e) for that purpose. *DeWes Enterprises v. Town & Country Carpets,* 130 Ga. App. 610, 612 (203 SE2d 867) (1974); *Tucker v. Chung Studio of Karate,* 142 Ga. App. 818, 821 (237 SE2d 223) (1977).

Normally in a probate proceeding, the burden of proof is on the Propounder and thus he has the opening and concluding arguments. *Lavender v. Wilkins,* 237 Ga. 510, 516 (228 SE2d 888) (1976). "It is permissible in a will contest for the caveator to admit a prima facie case for the propounder of the will, and thereupon to take the opening and conclusion. *Wood v. Davis,* 161 Ga. 690 (131 SE 885) [1925]." *Tilley v. King,* 190 Ga. 421, 427 (9 SE2d 670) (1940). *Johnson v. Sullivan,* 247 Ga. 663, 666 (278 SE2d 640) (1981). As we discussed in Division 2, Caveators in the instant case assumed the burden of proof on the issues being tried by admitting a prima facie case and thus had the right to make opening and concluding arguments.

4. The next enumeration complains the trial court erred in denying Propounder's motion for a directed verdict on the issue of mistake as to the conduct of an heir. Appellant argues there was insufficient evidence as to mistaken conduct to create an issue for jury determination.

OCGA § 9-11-50 (a) (Code Ann. § 81A-150) provides in pertinent part that "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. *Folsom v. Vangilder,* 159 Ga. App. 844 (285 SE2d 583) (1981). The standard used to review the grant or denial of a directed verdict is the "any evidence" test. *Ga. Dept. of Human Resources v. Montgomery,* 248 Ga. 465 (284 SE2d 263) (1981).

Although the evidence in the instant case is conflicting, there is sufficient evidence from which a reasonable trier of fact could find that the testator labored under a mistake of fact as to the conduct of his heirs. There was testimony that the testator believed the Caveators had all borrowed money from him and refused to pay it back when in fact only one of the Caveators, Paul, had borrowed from the testator and did repay him. Appellant testified that the testator stated to him that he made the will leaving everything to appellant because "the rest of them done got their part." There was also testimony that the testator mistakenly believed that his son and daughter were trying to kill him with poisoned food. This and other testimony was sufficient to create a jury question on the issue of mistake as to the conduct of an heir. It was therefore not error for the trial court to deny appellant's motion for a directed verdict.

5. Appellant also contends the trial court erred in denying his motion for a directed verdict on the issue of undue influence. As we

noted in Division 4, the trial court's ruling must be sustained if there was any evidence to create an issue for resolution by the jury.

"An attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, since such influence can seldom be shown except by circumstantial evidence. Thus, a confidential relation between the parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator, are relevant. While the quantity of influence varies with the circumstances of each case, according to the relations existing between the parties and the strength or weakness of mind of the testator, the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. [Cits.]" *Fowler v. Fowler,* 197 Ga. 53(2) (28 SE2d 458) (1943); *Perkins v. Edwards,* 228 Ga. 470, 475 (186 SE2d 109) (1971).

In the present case, a great deal of circumstantial evidence was produced on the issue of undue influence. There was evidence that a confidential relationship existed between the testator and appellant; that appellant allowed his father to think that his son and daughter-in-law were trying to poison him; that the will was made after appellant had discussed its contents with the attorney; that appellant was present when the will was made; that appellant was with the testator the majority of time and much more than the Caveators; that appellant kept the factum of the will and its contents a secret from Caveators for at least three years; that the testator suffered from arteriosclerosis, was eighty-three years old and susceptible to delusions; and finally that the testator left three of his children nominal bequests when they were not disliked or disfavored by him during his lifetime. Thus, there was evidence tending to show more than a mere opportunity for appellant to exert his influence on the testator. The question of undue influence is a question of fact for the jury. *Wheeler v. Rowell,* 234 Ga. 403, 404 (216 SE2d 301) (1975). The trial court did not err in denying appellant's motion for a directed verdict on the issue of undue influence.

6. In his next enumeration, appellant complains the trial court erred in its charge to the jury as to the form of the verdict. He argues the trial court's charge that the jury could return with a general verdict for either party left no opportunity to determine whether the jury's decision was based solely on mistake of fact. If it was, the will would have been admitted to probate as to all heirs except that heir

who was the subject of the testator's mistake.[4]

The jury in the instant case returned a general verdict in favor of the Caveators. The record discloses that before the jury retired to consider its verdict, counsel for appellant was asked by the court if there were any objections to the form of the verdict. The reply was in the negative. Furthermore, there was no objection to the form of the verdict when it was returned by the jury. Where a party allows a general verdict to be received and published in open court in the presence of his counsel, without objection or motion to have the jury retired with direction to find a special verdict, he will be deemed to have waived his right to a special verdict. *Livingston v. Taylor,* 132 Ga. 1, 9 (63 SE 694) (1908); *Johnson v. Sherrer,* 197 Ga. 392, 403 (29 SE2d 581) (1944). We, therefore, find no merit in this enumeration of error.

7. In his last enumeration of error, appellant contends the evidence presented at the trial was not sufficient to support the verdict of the jury. Specifically, the issue is whether there was sufficient evidence to support a verdict that the testator either lacked testamentary capacity or was unduly influenced when making his will.

We find there was ample evidence presented from which the jury would have been authorized to find that J. U. Skelton lacked testamentary capacity on the day he made his will. This evidence went to events taking place before, on, and after that date. There was testimony that the testator exhibited paranoid delusions at least a year before making the will; that he slept with two loaded pistols, a loaded shotgun, and a butcher knife under his pillow; that he engaged in imaginary conversations for hours at a time; that he imagined someone throwing sand into his house faster than he could sweep it out; that water was running out of his stove and could not be cut off; that his daughter-in-law entertained men in his chicken house; and that he imagined his children were trying to poison him.

Where there is conflicting evidence as to testamentary capacity to make a will, and sufficient evidence to establish the absence of testamentary capacity, the verdict of the jury finding in favor of the caveat will not be set aside on the ground that there is a lack of evidence to support the verdict. *Manley v. Combs,* 197 Ga. 768 (30 SE2d 485) (1944).

---

[4] OCGA § 53-2-8 (Code Ann. § 113-210) provides "A will executed under a mistake of fact as to the existence or conduct of an heir at law of the testator is inoperative, insofar as the heir at law is concerned, and the testator shall be deemed to have died intestate as to him."

Even if the jury had not decided that the testator lacked the requisite capacity, there was sufficient evidence, referred to in Division 5, for the jury to find that he was unduly influenced, a finding which alone would invalidate the will.[5] We, therefore, find sufficient evidence to support the jury's verdict.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 16, 1983.

*Jacque H. Wilkes,* for appellant.

*Nathaniel David Wages, Gray & Brown, Gary W. Brown, Donald E. Moore,* for appellees.

---

[5] OCGA § 53-2-6 (Code Ann. § 113-208) provides "A will must be freely and voluntarily executed; anything which destroys the testator's freedom of volition, such as fraudulent practices upon the testator's fears, affections, or sympathies; duress; or any undue influence whereby the will of another is substituted for the wishes of the testator, invalidates a will."