41367. GREEN v. JONES.
(326 SE2d 448)

SMITH, Justice.

This is a will contest in which appellant contends that his wife's will was the product of undue influence. We disagree.

Mrs. Imogene Green executed a will in which she expressly omitted her husband, appellant Roy Green. The will was executed without the knowledge of appellant just one day before Mrs. Green died. Mr. Ben Jones, appellee, executor, and father of Mrs. Green filed a petition to probate the will in the Probate Court of Murray County. Appellant filed a caveat contending that Mrs. Green was not of sound

and disposing mind and that the document was the result of undue influence. The will left everything to Mrs. Green's two sisters and her parents. The will was admitted; appellant appealed to the Murray County Superior Court. At the close of the evidence, appellee made a motion to have the issue of undue influence removed from the jury's consideration, contending that there was insufficient evidence. The motion was denied; the jury found in favor of appellant. Appellee filed a motion for new trial alleging among other things the court's refusal to remove the issue of undue influence from the jury. A new trial was granted. Prior to charging the jury, the trial judge informed both parties that he would not charge on undue influence, nor would he allow argument on the issue; the jury found in favor of appellee.

Mrs. Green had surgery for cancer in 1980. In 1981, the cancer reappeared and she began chemotherapy, but her condition was deteriorating. On Memorial Day 1982, she told her sister, Mrs. Ledford, that she wanted to write a will. Nothing more was said about a will until Sunday, July 18, 1982, when Mrs. Green asked Mrs. Ledford to bring her a tape recorder so that she could record her requests. The next day, Mrs. Green made a tape recording in the presence of two ministers. On the tape she identified her property and indicated how she wanted it distributed. The ministers testified that she recited the property and her intended legatees and devisees without any assistance and without any written notes. On Tuesday, Mrs. Ledford acting upon the request of Mrs. Green took the tape recording to an attorney. The attorney drafted a will in accordance with the tape recording. On Wednesday, he took the document to Mrs. Green to be executed. He advised Mrs. Ledford to have present at the execution of the will more than the statutorily required two witnesses, and to have witnesses who had been long time friends of Mrs. Green. The witnesses included: two friends who had known Mrs. Green for over thirty years, two ministers (one had known her a little less than one year and the other had known her for more than seven years), the attorney who drafted the will, the attorney's secretary, and a court reporter.

Prior to the recording of the execution of the will, the attorney talked with Mrs. Green to determine her capacity to execute a will and to see if she knew what property she owned and to whom she wanted it given. He read the will to her and discussed it with her. She remembered some items that she had forgotten to mention in the earlier tape recording and asked the attorney to add them to the will. It was the attorney's opinion that Mrs. Green was of sound and disposing mind and that her will was freely and voluntarily made.

The tape recordings were introduced into evidence. The recording made during the execution of the will began with the attorney putting Mrs. Green and all of the witnesses under oath. Mrs. Green

was questioned in the presence of the witnesses. She was asked who her husband, parents, and sisters were, whether she had any children, where she was, and why everyone was present. She was also asked to describe her property. She correctly answered all the questions, gave a full description of her property and named her intended devisees and legatees. When questioned about leaving her husband out of the will she responded, "Well, everything else that Roy and I have accumulated in our thirteen years of marriage almost, is in Roy's name. And as we've gone along, he has pretty well put in his name what he wanted, and in my name what he wanted me to have. And I feel like that this would be satisfactory with him to settle in just this way."

In response to further questioning, Mrs. Green indicated that no one had made any threats to her concerning her will, nor had any one forced her or suggested to her how she should leave her property. She responded negatively when asked if her sisters or parents had tried to force or induce her in any way to leave her property to them. She said, "it's strictly my idea."

Mrs. Green was in pain and was relying on a pain killer, Percodan, to help ease the pain. When asked if her medication was affecting her in any way she said, "No, I'm normal; I hear and understand all I've been spoken to right now, yeah."

The attorney read the will and as he read each page he asked Mrs. Green if it was correct before he asked her to initial it. At one point during the reading she closed her eyes and did not respond immediately when asked if the page was correct. Upon hearing her name she responded. When the reading was finished the attorney asked Mrs. Green if the document was her will. She said that it was and that she wished to sign it as her will. She was asked if she wanted the witnesses to witness the execution of her will and she said that she did. She signed the will.

The attorney questioned each of the witnesses under oath regarding Mrs. Green's testamentary capacity and whether they had any questions regarding her capacity. They all answered that they felt the will was freely and voluntarily made, that she knew who her family was, and that she knew what her property was. They all answered affirmatively when asked if they were present during the signing of the will; they signed as witnesses. Mrs. Green died the next night.

Appellant was not present when Mrs. Green made the first tape, nor was he present for the execution of the will. He testified that she was in such poor condition that she could not have made the tape, nor could she have executed the will. He did admit that it was her voice on the tape, but he said that she was in no condition to transact business at the time the two tape recordings were made. He denied telling three witnesses that Mrs. Green knew everything that was going on around her up to the time of her death. Appellant's testimony

indicated that he did not know of any undue influence exerted upon his wife.

1. Appellant contends that the trial court erred in failing to charge the jury on the issue of undue influence. Undue influence must exist at the time of the execution of the will to be a proper ground of caveat. *Pendley v. Pendley*, 251 Ga. 30, 31 (302 SE2d 554) (1983). There was insufficient evidence to indicate that there was anything that destroyed Mrs. Green's "freedom of volition, such as fraudulent practice upon [her] fears, affections, or sympathies; duress; or any undue influence whereby the will of another [was] substituted" for her wishes. OCGA § 53-2-6. We do not agree that the facts in this case are similar to the facts in *Skelton v. Skelton*, 251 Ga. 631 (308 SE2d 838) (1983). It would have been reversible error for the trial judge to charge the jury on undue influence when the evidence did not warrant the charge. *Orr v. Blalock*, 195 Ga. 863, 866 (25 SE2d 668) (1943). We find no reversible error.

2. Appellant contends that the trial court erred in failing to grant appellant's motion for mistrial after an improper comment by counsel for appellee.

Counsel for appellant objected to part of counsel for appellee's closing argument as being improper. The record indicates that the remarks of counsel for appellee were not so inflammatory and prejudicial that their injurious effects could not be eradicated by the trial judge's instructions. See *Domingo v. State*, 213 Ga. 24, 27 (96 SE2d 896) (1957). The trial judge promptly instructed the jury to disregard the comments and rebuked counsel for appellee. "[T]he trial judge is vested with a broad discretion and his ruling will not be disturbed unless it appears that his discretion was manifestly abused. [OCGA § 9-10-185; cits.]" *McCluskey v. American Oil Co.*, 225 Ga. 63, 64 (165 SE2d 830) (1969). We find no abuse of discretion on the part of the trial judge. The error enumerated does not demand a new trial.

3. Appellant contends that the trial court erred in failing to set forth the grounds for granting appellee's motion for new trial. "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50. Stating the grounds for granting appellee's motion for new trial was not required in this case. *CTC Finance Corp. v. Holden*, 221 Ga. 809, 810 (147 SE2d 427) (1966). *Guest v. Guest*, 150 Ga. App. 48 (256 SE2d 654) (1979).

We find no reversible error.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 26, 1985.

*William W. Keith III*, for appellant.
*Little & Adams, Robert B. Adams*, for appellee.